point, that an instrument of this kind is a promissory note. This is a commercial question, and this court is not bound to follow a decision of the supreme court of this state on this branch of the law; the more especially when it is contrary to the opinion of the whole mercantile community, as shown by uniform practice, and contrary also to the general opinion of the profession. Demurrer overruled.

NOTE [from original report.] The decision in the case of Lowe v. Bliss, above referred to, was made by a divided court, and with reference to the statute of Illinois concerning negotiable paper, and was afterward commented upon in the case of Bilderback v. Burlingame, 27 Ill. 338. in which case it was further held, that an instrument admitting a certain sum to be due, which may be paid in merchandise at a fixed price, becomes an absolute money demand, on failure of the payee to deliver the merchandise when it is called for. A note expressed to be payable with current rate of exchange, at the place where it is drawn and is to be discharged, is payable in coin, and there is no rate of exchange connected with it. The words, "with current rate of exchange," in such a note, are without significance. Hill v. Todd, 29 Ill. 101; Clauser v. Stone, Id. 114. Where the note provides "the current rate of exchange to be added," it is not a valid promissory note, even for the principal amount in the note. Philadelphia Bank v. Newkirk, 2 Miles, 442..

## Case No. 1,784.

### BRADLEY v. McKEE.

[5 Cranch, C. C. 298.] [1]

Circuit Court, District of Columbia. March Term, 1837.

EVIDENCE—COMPETENCY—PROCEEDINGS OF CORPO-
RATION — NEGOTIABLE INSTRUMENTS — EVIDENCE
—BURDEN OF PROOF—CORPORATIONS—OFFICERS
AND AGENTS — DISSOLUTION — USURY — WHAT
CONSTITUTES.

1. The proceedings of a corporation aggregate may be given in evidence against a party, not a member of the corporation. although there should be no evidence that such notice of the meeting, as the charter requires, had been given.

2. A promissory note. signed by A. B. as agent of an incorporated manufacturing company, does not, upon the face of it, import a personal obligation; and it is not incumbent on the defendant to show his authority to make such a note; nor the extent of his powers; nor that the money was applied to the use of the company; nor that he declared it was for their use; the burden of proof, in such case, is upon the plaintiff.

3. If, at the date of the note, or at the time it became payable, the company had ceased to do business as a company, the corporation was not thereby dissolved, nor the defendant thereby rendered personally responsible upon the note; and if, after the making of such note, the corporate property was sold by the company, who ceased to do business as a corporation, and the stockholders made a distribution of the effects of the corporation, and apportioned the debts due by the company to be paid by such individual stockholders, the corporation did not thereby cease to exist, but was capable of being bound by such a note.

[1] [Reported by Hon. William Cranch, Chief Judge.]

4. If it was the usage and custom of the banks and exchange-brokers in that part of the country where the note was made and indorsed, to discount such paper at one per cent. for sixty days, and to charge an additional premium of from a half of one per cent. to one per cent. for exchange on eastern paper, when such paper was loaned, and to charge the like discount and premium for the renewal of the notes given therefor; such a transaction, if bona fide and not intended as a cloak for usury, is not usurious.

5. Whether the transaction was bona fide, and not intended as a cloak for usury, is a question of fact to be left to the jury under all the circumstances of the case.

6. If a note be given by a person, bona fide, as agent of an incorporated manufacturing company, for a loan of money to the company, and the same was known to the person who discounted it, at the time of his discounting it, the agent is not personally liable upon the note.

At law. Assumpsit [by W. A. Bradley] against [Reddick McKee] the maker of the note mentioned in the preceding case, which was in this form: "Wheeling, March 22d, 1834. Sixty days after date, I promise to pay to the order of Richard Simmes, at the North-Western Bank of Virginia, $4,000, without defalcation, for value received. R. McKee, Agent Wheeling Cotton Manufacturing Company. $4,000." Indorsed: "Richard Simmes, Knox & McKee, M. Nelson, W. B. Atterbury."

Upon the trial, Mr. Brent, for the defendant, contended that he was the regularly appointed agent of the Wheeling Cotton Manufacturing Company, incorporated by the legislature of Virginia, and, as such, authorized to make the note; that it was made for the company, and legally bound them; and that it was not his private, individual act. Rathbon v. Budlong, 15 Johns. 1. Mr. Brent offered to read to the jury the minutes of the proceedings of a meeting of the company, (proved by a witness to be such,) at which the defendant was appointed agent.

Mr. Bradley objected that the books of the company are not evidence against a stranger. Starkie, Ev. pt. 2, p. 298. That there was no evidence that ten days' notice of the meeting had been given, as required by the charter.

Mr. Brent, contra, relied upon the opinion of the supreme court of the United States, in the case of Bank of U. S. v. Dandridge, 12 Wheat. [25 U. S.] 69; that the law "presumes that every man, in his private and official character, does his duty until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, omnia praesumuntur rite et solemniter esse acta, donec probetur in contrarium." "That persons acting publicly, as officers of the corporation, are to be presumed rightfully in office; acts done by the corporation. which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter," &c.

The court overruled the objection, and permitted the evidence to go to the jury.

Mr. Brent, for the defendant, then offered to read to the jury the deposition of M. Nelson.

Mr. Bradley, for the plaintiff, objected that the witness was one of the intermediate indorsers, and could not be permitted to discredit the note which he had indorsed. Caton v. Lenox, 5 Rand. [Va.] 32.

Mr. Brent replied that the rule was only applicable to mercantile negotiable paper, which this court has just decided this note not to be. Blagg v. Phenix Ins. Co. [Case No. 1,477]. And the plaintiff had cross-examined the witness, and therefore cannot now object to his competency. Harrison v. Courtauld, 1 Russ. & M. 428.

The court overruled the objection, and the deposition was read.

Mr. Bradley then contended that the note is not, on its face, a company note, but purports to be the individual note of the defendant; and that the burdon of proof is on him to show his authority to bind the company by such a note. White v. Skinner, 13 Johns. 30S. 311; Randall v. Van Vechten, 19 Johns. 60.

Mr. Brent, contra. The plaintiff produces a note signed by the defendant, as agent of the company, and the defendant proves that he was their agent; the burden of proof is now on the plaintiff to show that the defendant is personally liable. Theo. Ag. 333; Wyman v. Gray, 7 Har. & J. 409; 2 Kent, Comm. 614. Whereupon, Mr. Bradley, for the plaintiff, moved the court to instruct the jury that the note upon which this suit is brought imports, upon its face, a personal obligation, and the defendant is personally liable therefor, unless they shall find, from the evidence, that the defendant was authorized to bind the Wheeling Cotton Manufacturing Company by such contract, declared their names, and professed to act for them in the execution of it; and signed the same in pursuance and performance of his said authority. Which instruction the court refused to give.

Mr. Bradley then further moved the court to instruct the jury, that the said corporation is but an agent, exercising only delegated authority; that all agents appointed by it must act within the object and scope of the charter of the said company; that the appointment of such sub-agent must be clearly proved, and the extent of his powers, in the particular matter, clearly defined; and if the jury shall be satisfied, by the evidence, that the promissory note, in the declaration mentioned, was given for a loan of money, they must further find that it was for a loan of money to the said company, for its corporate objects, and that the defendant was fully authorized to obtain such loan, and to bind the said company, by his signature to the said note, and declared, or it was under-

stood between the lender and such agent, that it was for the use of the said company; otherwise, the defendant is personally liable. Which instruction the court also refused to give.

Mr. Bradley then further moved the court to instruct the jury, that, if from the evidence they shall be of opinion, that on the 22d day of March, 1834, or at any time before that day, or before the 24th day of May, 1834, the Wheeling Cotton Manufacturing Company had ceased to do business as a company, or had sold all the property of the company, and ceased to do business as a company or corporation, then the said corporation was dissolved, and the defendant is personally and individually responsible on the note upon which this suit is brought. Which instruction the court also refused to give.

Mr. Bradley then further moved the court to instruct the jury, that, if from the evidence they shall find, that, in the summer of 1834, after the making of the said promissory note, the corporate property of the company was all sold by the said company; that the said company ceased to do business as a corporation, and the stockholders therein made a distribution of the effects of the said corporation, and apportioned the debts due by the said company, to be paid by such individual stockholders, then there is nobody in esse which can be sued as the principal or which the defendant, as agent, could make responsible by the signature to the said note, and he, the defendant, is personally responsible therefor. Which instruction the court also refused to give.

Mr. Bradley then further moved the court to instruct the jury, that if from the evidence they shall be of opinion, that, in the years 1833 and 1834, and for a long time before, it was the usage and custom of the banks and exchange-brokers, in that part of the state of Virginia in which the town of Wheeling is, to discount paper at and after the rate of one per cent. for sixty days; and, in addition thereto, to charge a premium for exchange on eastern paper, varying from an half to one per cent. when eastern paper was loaned; and also to charge the same discount and premium for the renewal of the notes given therefor; and that the said transaction was bona fide, and not intended as a cloak for usury, this case was not usurious. Mr. Brent, contra, cited New York Firemen's Ins. Co. v. Ely, 2 Cow. 705. But the court gave the instruction.

Mr. Bradley then moved the court to instruct the jury, that, if they shall be of opinion from the evidence that the consideration given for the promissory note upon which this suit is brought, was a loan negotiated by William B. Atterbury to the Wheeling Cotton Manufacturing Company, by Reddick McKee, agent thereof, or by any other person acting on behalf of the said

company; and that the terms of the said loan were one per cent. for sixty days' discount for forbearance, and one half per cent. for exchange on eastern funds; and that such was the usage and custom of the banks and exchange-brokers in that part of the country where the said loan was made, in the years 1833 and 1834; and that the same rate of discount and premium, or commission, was charged upon each renewal of such loans, then the said contract was bona fide, and not usurious. Com. Usury, 133–135. Which instruction the court refused to give.

Mr. Brent, for the defendant, then moved the court to instruct the jury, that upon the whole evidence the plaintiff is not entitled to recover in this action, even if the defendant had no authority to bind the company. Which instruction the court refused to give. But upon the motion of the defendant's counsel, instructed the jury, that if they believe from the evidence that the note, on which this suit is brought, was given by the defendant bona fide as agent for the Wheeling Cotton Manufacturing Company, for a loan of money to the said company, and that the same was known to the said Atterbury at the time he discounted the said note, the plaintiff is not entitled to recover in this action. New York Firemen's Ins. Co. v. Ely, 2 Cow. 703.

Mr. Brent, for the defendant, cited Theo. Ag. 303, 337; Long v. Colburn, 11 Mass. 97; Ballou v. Talbot, 16 Mass. 461; Harper v. Little, 2 Greenl. 14; 2 Kent, Comm. 631.

Mr. Bradley cited 2 Liverm. Prin. & Ag. 247; Buffum v. Chadwick, 8 Mass. 103; Odiorne v. Maxcy, 13 Mass. 178; Batty v. Carswell, 2 Johns. 48; Thacher v. Dinsmore, 5 Mass. 299.

Verdict for defendant. The plaintiff took bills of exception, but has not prosecuted a writ of error.

[NOTE. For determination of an action on the same note by an indorsee against a remote indorser thereof, see Bradley v. Knox, Case No. 1,782.]

---

BRADLEY (MONROE v.). See Case No. 9,-713.

---

## Case No. 1,785.

### BRADLEY et al. v. REED et al.

[12 Pittsb. Leg. J. 65; 2 Pittsb. Rep. 519.]

Circuit Court, W. D. Pennsylvania.

INJUNCTION — PROCEDURE —WAIVER OF NOTICE—WASTE —INJUNCTION TO PREVENT — VENDEE IN POSSESSION — MORTGAGOR IN POSSESSION —TENANT IN COMMON—DISSOLUTION—LACHES.

1. Notice, previous to motion for an injunction, required by 5th section of the act of congress, 2d March, 1793 [1 Stat. 334], may be waived by appearance and filing answer.

[See Marsh v. Bennett, Case No. 9,110; Thayer v. Wales, Id. 13,871.]

2. As a general rule in the practice of courts of equity, nothing can be read on such motion but the answer, and if the answer denies the equity of the bill, the injunction will be dissolved.

3. Waste is an exception, upon the ground that an irreparable mischief would ensue, and the court will interpose to prevent it.

4. To show waste, affidavits are admissible, even after answer filed.

5. A court of equity will not permit a vendee in possession, with the great bulk of the purchase money due and unpaid, to cut and take away timber, and thus diminish the security of the vendor.

6. So also, an injunction lies against a mortgagor in possession, to stay waste. The court will not suffer him to prejudice the security.

7. Since the statute of Westminister II., giving one tenant in common a legal remedy against his co-tenant, courts of equity have interposed to prevent waste and preserve the corpus of the estate until partition.

8. Pending a bill in equity, one tenant in common will not be permitted to strip the land of its timber. It is an injury recognized by law, and the remedy by injunction is applicable to every species of waste.

9. Courts of equity will dissolve an injunction where it appears that the complainant has been guilty of intentional delay in prosecuting his cause.

In equity. This is a bill [by James Bradley and others against William Reed and Joseph Hyde and others] claiming title to eleven thousand acres of land in Elk and Jefferson counties, and praying an injunction to stay waste. The land is of great value on account of the timber. The injunction was granted on filing the bill. Respondents' counsel moved to dissolve it. [Motion denied.]

Marshall & Purviance, for the motion.
Geo. P. Hamilton, contra.

McCANDLESS, District Judge. Although this injunction issued without the previous notice, required by the 5th section of the act of congress of 2d March, 1793 (Brightly, 256), it was admitted, at the argument, that the irregularity was cured by an appearance and filing the answer. What we have now to consider, is not the question of title, which has been elaborately and ably argued, but whether, with the lights before us, we would grant a preliminary injunction.

This is an application by one tenant in common charging his co-tenant with waste. As a general rule in the practice of courts of equity, nothing can be read on such a motion but the answer. If the writ has issued, and the answer, when filed, denies the equity of the bill, the injunction will be dissolved. But there are many cases where this rule does not prevail. Waste is one of them; and the exception to the rule is upon the ground, that an irreparable mischief would