The title of the claimants, Waite and Young was a title by act and operation of law, and not by the act and *Page 584 
consent of the corporation whose property was transferred. It was acquired in invitum, as distinguished from a title derived from the voluntary act and transfer of the owner. The law distinguishes only between these two classes, in determining the effect to be given to transfers of movable property at the time actually within a jurisdiction foreign to that of the owner. The law of the domicile of the owner will control and give effect to every voluntary conveyance by the owner of personal property, wherever such property is situated. By a sort of fiction, that which is known as personal property adheres to the person and has no fixed situs, and hence the maxim, mobilia sequunterpersonam; and the law which governs the person of the owner will control as to the disposition or transmission of it. (Story Confl. Laws, §§ 378, 380, 381.) But not so as to devolution of title by act and operation of law, whether by forfeiture, bankruptcy, insolvency or otherwise. In such case, the transfer, depending upon positive law, is only operative where such law prevails and is obligatory; and as the laws of a state or government have no extra-territorial force, it follows that title to property in one state does not pass by virtue of a law of a foreign state, although it be the state and domicile of the owner. The law operates, if at all, in rem, and the state by whose legislation it is enacted having no jurisdiction over property without its territorial limits, it is entirely inoperative in respect to it. A quasi effect may be given to the law, as a matter of comity and inter-state or national courtesy, when the rights of creditors or bona fide purchasers or the interests of the state do not interfere, by allowing the foreign statutory or legal transferree to sue for it in the courts of the state in which the property is; but he is regarded in such case as representing the original owner, and to this extent effect is given, in one state or country, to the laws of another. (Story Confl. Laws, § 413.) This has come to be the well-established rule of this State, the United States and most of the States of the Union; and although it differs essentially from the rule in Great Britain and in other countries of Europe, it is no longer an open question here. The question in other countries than our own has *Page 585 
generally, if not exclusively, arisen in cases of bankruptcy and in contests between the assignees in bankruptcy and creditors pursuing their remedy under foreign attachment laws, and where there have been bankrupt or insolvent laws similar and substantially the same in the several States between the citizens of which the controversy existed. And as it is conceded that the rule is not one of strict legal right, but of decision, and has been adopted in the exercise of an international comity which is recognized in the jurisprudence of all civilized governments, it is not entirely certain that the same rule would be applied even in Great Britain when the foreign bankrupt or insolvent law was essentially different from their own, or when the distribution of the estates of insolvents was upon an essentially different principle. (Story Confl. Laws, § 415.) Be that, however, as it may, we have departed from the rule of the English courts, and in the disposal of the movables of foreigners within this State have, for the protection of the citizens of the state, restricted the operation of foreign laws, and hold that a judicial transfer only operates infra territoriam, and has no binding influence abroad: which was originally the rule elsewhere. (Per Lord MEADOWBANK, Stein's case, 1 Rose's Bank. Cas., app., 462;Mawdsly v. Park, cited 1 H. Bl., 680.) The earliest case in the courts of this State was that of Holmes v. Remsen (4 Johns. Ch., 460), in which Chancellor KENT, following the decisions in the English courts, decided that the effect of the transfer of personal property within this State was the same whether made by the owner residing abroad or by the law of his domicil for him. But this distinguished jurist, at a later period, upon a review of all the cases decided before as well as after the case of Holmes v. Remsen, yields the question, and concedes that the weight is now the other way, and says that "it may now be considered as part of the settled jurisprudence of this country that personal property, as against creditors, has locality, and that lex loci rei sitæ prevails over the law of the domicile with regard to the rule of preferences in the case of insolvent estates. The laws of other governments have no force beyond their territorial limits; and if permitted to *Page 586 
operate in other States, it is upon a principle of comity, and only when neither the State nor its citizens would suffer any inconvenience from the application of the foreign law. A prior assignment in bankruptcy under a foreign law will not be permitted to prevail against a subsequent attachment by an American creditor of the bankrupt's effects found here." (2 Kent Com., 406, 407.) A series of cases in other States, commencing before the Revolution, hold to this doctrine. (Burk v.McLean, and Wallace v. Patterson, from the Maryland Reports [1 Hare McHen., 236; 2 id., 463]; Taylor v. Geary, decided in Connecticut in 1787 [Kirby's Rep., 313]; Milne v. Martin,
6 Berry, 353; Mulliber v. Aughenbargh, 1 Penn., 117; McNeil
v. Colquhoun, 2 Hayw. [N.C.], 24; Topham v. Chapman, So. Car., 283; Robinson v. Carow, 4 McCord, 519; Ingraham v.Geyer, 13 Mass., 146 — all cited by Chancellor KENT, in his Commentaries, supra.) The rule, as settled in this State and in the United States, is that, in cases of assignment by operation of law, the assignees are in the same situation as the bankrupt himself in regard to foreign debts. They take subject to every equity and subject to the remedies provided by the laws of the foreign country where the debt is due and the property is situated. (Story Confl. Laws, § 412, et seq.; Westlake Confl. Laws, § 281.) The reasoning of our courts would, doubtless, carry the rule further, and prohibit assignees under foreign bankrupt laws from suing in our courts. (Mossleman v. Caen, 34 Barb., 66.) In Harrison v. Story (5 Cranch, 298; affirmed in Ogden
v. Saunders, 12 Wheat., 213), it was adjudged "that in the case of a contract made with foreigners in a foreign country, the bankrupt laws of the foreign country are incapable of operating a legal transfer of property in the United States." A foreign bankrupt law is not paramount in disposing of the rights of the bankrupt in this State. (Abraham v. Plestero, 3 Wend., 538.) In Johnson v. Hunt (23 Wend., 87), the principle was applied against trustees appointed in this State under the statute authorizing proceedings against absconding debtors; which is in the nature of a bankrupt law. It is, like the proceedings under which the receivers of the Commercial Bank of Toledo *Page 587 
were appointed, a statutory proceeding for the administering the estate of the debtor for the benefit of creditors. It was then held that the statutory assignment did not work a legal transfer of the property of the debtor so as to invalidate a bona fide
conveyance of property by him in another state to a citizen of that state. Hoyt v. Thompson (1 Seld., 320; S.C.,19 N.Y., 207), is directly in point, and decisive of the question here, being the deliberate judgment of this court upon the very question before us. In Massachusetts the courts have gone so far as to deny effect to a voluntary assignment of property in that State by a citizen of this State to a trustee for the benefit of creditors, giving preference to creditors, also citizens of this State. (Zipcey v. Thompson, 1 Gray, 243.) The legislature of Ohio assumed the disposition of the property of the insolvent bank in invitum, and undertook to vest the title in the receivers; but this statutable conveyance cannot operate upon any subject not within the territorial limits of Ohio. It is none the less a conveyance in invitum because the authority for the proceeding was a part of the organic law of the corporation. It was, nevertheless, a proceeding in the nature of a proceeding in bankruptcy. The acceptance of the charter, with this provision for a distribution of its effects upon the happening of insolvency, cannot operate to give to the transfer the effect of a voluntary conveyance of the assets. The title of the trustees is a statutory title, and must defer to the lien acquired by the creditors attaching the property in this state. Creditors within this State having acquired a lien under our laws upon property within the State, will not be deprived of their lien and sent to a foreign state to seek such portion of the insolvent estate as the laws of that state will, upon distribution, give them. The State will do justice to its own citizens so far as it can be done by administering upon property within its jurisdiction, and will yield to comity in giving effect to foreign statutory assignments only so far as may be done without impairing the remedies or lessening the securities which our laws have provided for our own citizens. (Story Confl. Laws, § 414.) *Page 588 
It is also urged in behalf of the receivers: 1. That the Superior Court of the city of New York had not jurisdiction of one of the actions in which an attachment was issued, and under which one of the respondents claims to have acquired a lien; and, 2. That neither of the attachments was duly served by the sheriff of the city of New York so as to bind the funds on deposit with the American Exchange. It is sufficient to say that, so far as the record shows, these objections are taken for the first time upon this appeal. They were not suggested either by answer or upon either of the hearings below. They must be regarded as waived. But it would seem, from a cursory examination of the questions made, that the appellants have lost nothing by the omission earlier to take the objections. The judgment must be affirmed, with costs.
All the judges concurring,
Judgment affirmed.