Sutherland, J.
Judge Cowles, on the hearing before him, found, as matters of fact, that on the 23d of December, T854, the Metropolitan Bank sued the Toledo Bank as a foreign corporation, and attached the funds of that bank in the *581 hands of the American Exchange Bank; that on the 5th of January, 1855, O. H. Bliss and Joseph Kelsey commenced a similar suit against the Toledo Bank, and attached the funds of that bank in the hands of the American Exchange Bank; that on the 5th February, 1855, the defendants, Powers, Martin and Sheridan, also sued the Toledo Bank in like manner, and attached the funds of that bank in the hands of the Amerisan Exchange Bank, and that all of the above' attachments were levied by John Orser, sheriff of New York.
In view of these findings of fact, it is very plain to me that the counsel for the receivers cannot now, for the first time, take or urge the point, that the attachments were not duly levied or served. It must.be presumed that they were.
So, also, as to the point taken by the counsel for the receivers, that the Superior Court had no jurisdiction of the action of the Metropolitan Bank, and that, therefore, the attachment issued in the action was void. If the counsel is right in supposing that section 427 of the Code does not extend or enlarge the jurisdiction of the Superior Court as to actions against foreign corporations, given or conferred by subdivision 3 of section 33 of the Code, yet, in the absence of anything in the case to show the contrary, it must be presumed' that the Superior Court had jurisdiction of that action, under section 33 of the Code, and that the attachment in the action was duly issued. The presumption must be in favor of the jurisdiction of the court, and the regularity of the attachment, particularly as it does not appear that this point was at any time taken of urged in the court below.
It is plain, too, that there is no force in the point taken by the counsel for the receivers, that all the proceedings in the suits against the Toledo Bank were void, on the ground that that bank had ceased to exist as a corporation before the suits were commenced. The Ohio statute does not decláre, nor do I see any ground upon which it can be said, that its insolvency and the consequent transfer of its property was, or should be, deemed a dissolution of the corporation. It is plain to me that, notwithstanding its insolvency and the consequent trans *582 fer of its property, it continued to have a name and existence as a corporation, so far, at least, as to be capable of being sued as such.
The question, then, in this case, is whether the court below erred in deciding that the attaching creditors had acquired liens upon the funds in question, in. preference to any claim of the receivers, and in directing the funds to be applied in payment of the claims of the attaching creditors.
The decisions of the courts of this State leave no'room for doubt on this question.
Assuming that the Ohio statute, upon the insolvency of the Commercial Bank of Toledo, vested all its property, in the first instance, in the board of control, and then in the receivers, on their appointment under the act, this transfer of its property, as to the insolvent bank, was and must be deemed to have been- an involuntary transfer.
It would be absurd to say or to presume that the bank purposely committed the act of insolvency for the purpose of so transferring its property, and, therefore, that the transfer was, or should be, deemed voluntary.
This statutory proceeding as to the courts of this State was a foreign statutory bankrupt proceeding, by which the bankrupt or insolvent corporation was divested of all its property, by the statute, without its consent.
It may be conceded that, as between the receivers and the insolvent bank,'the statute vested in the receivers, on their appointment, the title to the funds in question in the American Exchange Bank; but as the Ohio statute, and the proceedings under it, could have no force or operation in this State," except such as might be conceded to it by the authorities and courts of this State, on the principle of comity, it follows that such title must be deemed to have vested in the receivers subject to the control of the authorities and courts of this State over. the funds, under the laws and regulations of this State.
The question, then, is one of comity, to be settled by the decisions of the courts of this State, as determining how far they will recognize a foreign involuntary bankrupt proceeding.
*583 In Holmes v. Remsen (20 John., 259), it was said that the assignees of a bankrupt take “ subject to the remedies provided by the laws of the foreign country where the debt is due,” &c. Again: “ The law of the domicile having sequestered the bankrupt’s estate, so as to divest' him of the control over it, and appointed them (the assignees of the bankrupt) to administer it, they stand here on the footing of administrators merely, with a right of suing in common with other creditors; but our law' will not regard the chose in action as exclusively appropriated to their use; and the preference can only be gained by pursuing the remedies which our. laws afford.”
It would probably follow, from the principles laid down in Holmes v. Bemsen, that the court below was right in awarding the funds in question to the attaching creditors; but the Court of Errors, in Abraham v. Plestoro (3 Wend., 540-548), went much further in refusing to recognize a title under a foreign bankrupt law. I understand that in this case the court held, that such title will not be recognized by the courts of this State, even where the question arises entirely between the bankrupt and his assignee and creditors, all residing in the country under whose laws the assignment was made.
Abraham v. Plestoro was an appeal from an order of the Chancellor, denying a motion to dissolve an injunction. (1 Paige Ch., 236.) The Chancellor conceded that had the contest arisen between creditors abroad, claiming under the proceedings in bankruptcy, and creditors here claiming adversely under our laws, the preference would be due to the latter.
The same principles apply to bankrupt proceedings under a statute of one of the States of the Union. (Johnson v. Hunt, 23 Wend., 87; Hoyt v. Thompson, 1 Seld., 329, 330; Beardsley, arguendo, and cases cited by him; Hoyt v. Thompson, 19 N. Y., 224, 225.)
The cases cited will not permit a doubt that the judgment of the Supreme Court should be affirmed, with costs.
Allen, J.
The title of the claimants, Waite and Young was a title by act and operation of law; and not by the act and *584 consent of the corporation whose property was transferred. It was acquired ininvitum, as.distinguished from a title derived from the voluntary act and transfer of the owner. The law distinguishes only between these two classes, in determining the effect to be given to transfers of movable property at the time actually within a j urisdietion 'foreign to that of the owner. The law of the domicile of the owner will control and give effect to every voluntary conveyance by the owner of personal property, wherever such property is situated. By a sort of fiction, that which is known as personal property adheres to the person and has no fixed situs, and hence the maxim, mobilia sequunter personam ; and the law which governs the person of the owner will control as to the disposition or transmission of it. (Story Confl. Laws, §§ 378, 380, 381.) But not so as to devolution of title by act and operation of' law, whether by forfeiture, bankruptcy, insolvency or otherwise. In such case, the transfer, depending upon positive law, is only operative where such law prevails and is obligatory; and as the laws of' a state or government have no extra-territorial force, it follows that title to property in one state does not pass by virtue of a law of a foreign state, although it be the state and domicile of the owner. The law operates, if at all, in rem, and the state by whose legislation it is enacted having no jurisdiction over property without its territorial limits, it is entirely inoperative in respect to it. A quasi effect may be. given to the law, as a matter of comity and inter-state or national courtesy, when the rights of creditors or bona fide purchasers or the interests of the state do not interfere, by allowing the foreign statutory or legal transferree to sue for it in the courts of the state in which the property is; but he is regarded in such case as representing the original owner, and to this extent effect is given, in one state or country, to the laws of another. (Story Confl. Laws, § 413.) This has come to be the well-established rule of this State, the United States and most of the States of the Union; and although it differs essentially frpm the rule in Great Britain and in other countries of Europe, it is no longer an open question here. The question in other countries than our own has *585 generally, if not exclusively, arisen in, cases of bankruptcy and in contests between the assignees in bankruptcy and creditors pursuing their remedy under foreign attachment laws, and where there have been bankrupt or insolvent laws similar and substantially the same in the several States between the citizens of which the controversy existed. And as it is conceded that the rule is not one of strict legal right, but of decision, and has been adopted in the exercise of an international comity which is recognized in the jurisprudence of all civilized governments, it is not entirely certain that the same rule would be applied even in Great Britain when the foreign bankrupt or insolvent law was essentially'different from their own, or when the distribution of the estates of insolvents was upon an essentially different principle. (Story Confl. Laws, § 415.) Be that, however, as it may, we have departed from the rule of the English courts, and in the disposal of the movables of foreigners within this State have, for the protection of the citizens of the state, restricted the operation of foreign laws, and hold that a judicial transfer only operates infra territoriam, and has no binding influence abroad: which was originally the rule elsewhere. (Per Lord Meadowbank, Stein's case, 1 Rose’s Bank. Cas., app., 462; Mawdsly v. Park, cited 1 H. Bl., 680.) The earliest case in the courts of this State was that of Holmes v. Remsen (4 Johns. Ch., 460), in which Chancellor Kent, following the decisions in the English courts, decided that the effect of the transfer of personal property within this State was the same whether made by the owner residing abroad or by the law of his domicil for him. But this distinguished jurist, at a later period, upon a review of all the cases decided before as well as after the case of Holmes v. Remsen, yields the question, and concedes that the weight is now the other way, and says that “it may now be considered as part of the settled jurisprudence of this country that personal property, as against creditors, has locality, and that lex loci rei sites prevails over the law of the domicile with regard to the rule of preferences in the case of insolvent estates. The laws of other governments have no force beyond their territorial limits; and if permitted to *586 operate in other States, it is upon a principle of comity, and only when neither the State nor its citizens would suffer any inconvenience from the application of the foreign law. A prior assignment in bankruptcy under a foreign law will not be permitted to prevail against a subsequent attachment by. an American creditor of the bankrupt’s effects found here.” (2 Kent Com., 406, 407.) A series of cases in other States, commencing before the Revolution, hold to this doctrine. (Burk v. McLean, and Wallace v. Patterson, from the Maryland Reports [1 Hare & McHen., 236; 2 id., 463]; Taylor v. Geary, decided in Connecticut in 1787 [Kirby’s Rep., 313] ; Milne v. Martin, 6 Berry, 353; Mulliber v. Aughenbargh, 1 Penn., 117; McNeil v. Colquhoun, 2 Hayw. [N. C.], 24; Topham v. Chapman, So. Car., 283; Robinson v. Carow, 4 McCord, 519; Ingraham, v. Geyer, 13 Mass., 146—all cited by Chancellor Kent, in his Commentaries, supra.) The rule, as settled in this State and in the United States, is that, in cases of assignment by operation of law, the assignees are in the same situation as the bankrupt himself in regard to foreign debts. They take subject to every equity and subject to the remedies provided by the laws of the foreign country where the debt is due and the property is situated. (Story Confl. Laws, § 412, et seq.; Westlake Confl. Laws, § 281.) The reasoning of our courts would, doubtless, carry the rule further, and prohibit assignees under foreign bankrupt laws from suing in our courts. (Mossleman v. Caen, 34 Barb., 66.) In Harrison v. Story (5 Cranch, 298; affirmed in Ogden v. Saunders, 12 Wheat., 213), it was adjudged “that in the case of a contract made with foreigners in a foreign country, the bankrupt laws of the foreign country are incapable of operating a legal transfer of property in the United States.” A foreign bankrupt law is not paramount in disposing of the rights of the bankrupt in this State. (Abraham v. Plestero, 3 Wend., 538.) In Johnson v. Hunt (23 Wend., 87), the principle was applied against trustees appointed in this State under the statute authorizing proceedings against absconding debtors; which is in the nature. of a bankrupt law. It is, like the proceedings under which the receivers of the Commercial Bank of Toledo *587 were appointed, a statutory proceeding for the administering the estate of the debtor for the benefit of creditors. It was then held that the statutory assignment did not work a legal transfer of the property of the debtor so as to invalidate a Iona fide conveyance of .property by him in another state to a citizen of that state. Hoyt v. Thompson (1 Seld., 320; S. C., 19 N. Y., 207), is directly in point, and decisive of the question here, being the deliberate judgment of this court upon the very question before us. In Massachusetts the courts have gone so far as to deny effect to a voluntary assignment of property in that State by a citizen of this State to a trustee for the benefit of creditors, giving preference to creditors, also citizens of this State. (Zipcey v. Thompson, 1 Gray, 243.) The legislature of Ohio assumed the disposition of the property of the insolvent bank in invitum, and undertook to vest the title in ' the receivers; but this statutable conveyance cannot operate upon'any subject not within the territorial limits of Ohio. It is none the less a conveyance in invitum because the authority for the proceeding was a part of the organic law of the corporation. It was, nevertheless, a proceeding in the nature of a proceeding in bankruptcy. The acceptance of the charter, .with this provision" for a distribution of its effects upon the happening of insolvency, cannot operate to give to the transfer the effect of a voluntary conveyance of the assets. The title of the trustees is a statutory title,-and must defer to the lien acquired by the creditors attaching the property in this state. Creditors within this State having acquired a lien under our laws upon property within the State, will not be deprived of their lien and sent to a foreign state to seek such portion of the insolvent estate as the laws of that state will, upon distribution, give them. The State will do justice to its own citizens So far as it can be done by administering upon property within its jurisdiction, and will yield to comity in giving effect to foreign statutory assignments only so far as may be done without impairing the remedies or lessening the securities - which our laws have provided for our own citizens. (Story Confl. Laws, § 414.)
*588 It is also urged in behalf of the receivers: 1. That the Superior Court of the city of Hew York had not jurisdiction of one of the' actions in which an attachment was issued, and under which one of the respondents claims to have acquired a lien; and, 2. That neither of the attachments was duly served by the sheriff of the city of Hew York so as to bind the funds on deposit with the American Exchange. It is sufficient to say that, so far as the record shows, these objections are taken for the first time upon this appeal. They were not suggested either by answer or upon either of the hearings below. They must be regarded as waived. But it would seem, from a cursory examination of the questions made, that the appellants have lost nothing by the1 omission earlier to take the objections. The judgment must be affirmed, with costs.
All the judges concurring,
Judgment affirmed.