## COLT v. O'CALLAGHAN.

Where several judgment creditors, each of whose claims is under three hundred dollars, but whose aggregate amount exceeds that sum, unite in a petition of intervention in an action between their debtor and a third person claiming a privilege in virtue of separate seizures made by them under execution, an appeal taken by them will not be dismissed on the ground that their claims do not severally amount to three hundred dollars.

Where a vendor has no privilege by the law of the place of sale, he can acquire none by the transfer of the property to a country where a privilege would be granted to a vendor under such a contract made within its jurisdiction.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *Elwyn*, for the plaintiff, relied on Story's Confl. Laws, § 323. Huberus, De Conflictu Legum, § 7. *Harrison* v. *Skerry*, 5 Cranch 298. *Schmidt*, on the same

side. *Bartlette*, for the defendant and appellant.    *T. H. Howard*, for the inter-
venors, who also appealed, relied on *Whiston* v. *Stodder*, 8 Mart. 135.   The
judgment of the court was pronounced by

EUSTIS, C. J.   The plaintiff sold to the defendant, in the city of New York,
several coils of wire for the sum of $500, which was seized by the appellants, who
were judgment creditors of the defendant, under executions.   The judge who
tried the cause gave the plaintiff his privilege of vendor adversely to the seizure
made by the appellants; from which judgment this appeal is taken.   A motion
was made to dismiss the appeal, on the ground that the claims of the appellants,
who were intervenors in the court below, do not severally amount to a sufficient
sum to give this court jurisdiction.   The appellants united in their petition of
intervention, and their aggregate claims exceed in amount the sum of $300.
The value of the thing seized, as well as the plaintiff's claim, exceeds that
sum.   The motion to dismiss the appeal is therefore disallowed.

It is alleged that the delivery of the wire to the defendant took place in New
Orleans.   It was shipped by the vendor to *O'Callaghan*, the purchaser, in New
Orleans, he paying the freight; and, under the statement of facts, "that *Colt*
sold and delivered the wire in question to *O'Callaghan*, and that the same never
was paid for, &c.," signed by counsel, we are bound to consider the contract as
complete and executed in New York.   The judge allowed the plaintiff his
privilege of vendor, on the principle that privileges appertain to the remedy,
and are not dependent on the law of the place where the contract was made.
The case was before us before the adjournment in June last; and was set
down for further argument at the November term.

We have been referred to the treatise of Judge Story on the Conflict of
Laws, as supporting the doctrine in which the privilege to the plaintiff was al-
lowed.   In section 322 of that work it is expressly laid down, that where the
lien or privilege does not exist in the place of the contract it will not be allowed
in another country, although the local law where the suit is brought would oth-
erwise sustain it, and the case of *Whiston et al.* v. *Stodder et al.*, 8 Mart. 135,
is cited in illustration of the principle.   In that case it was decided, after argu-
ment by eminent counsel, that in a sale completed in a country in which the
vendor has no privilege, he acquires none by its being brought here.   By the
laws of New York *Colt* could have no privilege on the merchandise sold by
him, and it is difficult to find a reason for his acquiring one here.

This decision is said to be in derogation of a general principle that the al-
lowance of priorities of payment belongs exclusively to the remedy.   It is true
that in the work referred to, in which the principle established in *Whiston's*
case is acknowledged, the antagonist doctrine is thus apparently recognised in
section 575: "The liens, implied hypothecations, and priorities of satisfaction,
given to creditors by the law of particular countries, and the order of payment
of their debts *are generally treated* as belonging to the subject of proceedings
*ad litis ordinationem*, and not to the merits of the claim;" and Rodemburg,
Boullenois and Voct are referred to as authority.

Since the decision of the case of *Whiston*, we have never known it to be de-
viated from in our tribunals; and we are not aware of any decision of a court in
the last resort, in which the rule just quoted has been acted upon.   The case
of *Harrison* v. *Skerry*, 5 Cranch, 298, we considered in the case of *Lee* v.
*His Creditors*, *ante* p. 599.   The opinion in the case of *Harrison* v. *Skerry*
must be taken as one whole, and as applicable to the state of facts then under

CoLT
v.
O'CALLAGHAN.

consideration, in which priority of payment was given to the United States in the distribution of the effects of a bankrupt over debts contracted by a foreigner in a foreign country. This opinion has been considered as adverse to the reᱚ cognition of liens under foreign contracts, and never, as we are aware of, been held as sanctioning the doctrine that a party who has no privilege on merchandise by the law of the place where his contract is completed, can acquire one by a translation of the property to a country where a privilege is granted on similar contracts made within its jurisdiction.

The quotation made by the counsel from Huberus relates to prescription and execution alone.

Those who are at all familiar with the subject of the conflict of laws are often embarrassed in their enquiries on finding that, in many rules which have been held to be general and of universal application, the cases excepted outᱚ number those within their purview, under the jurisprudence of the present day; and our experience often admonishes us of the necessity of the greatest caution in laying down or adopting any general rules, however plausible they may appear, which have not stood the test of scrutiny, of experiment, and of time. In this case we see no reason for deviating from the law as settled in *Whiston's case*.

It is therefore decreed that that portion of the judgment allowing the plaintiff a privilege on the wire be reversed ; and that there be a judgment in favor of the intervenors, subjecting the wire seized in this case to their executions severally ; the plaintiff paying the costs of the intervention and of the appeal.