## No. 8771.

### ADLER, GOLDMAN & SIEGEL VS. G. WOLFF ET ALS.

The purchaser of a commodity, without exhibition of samples, is entitled to recover back money paid for accommodation, in advance, when, after inspection of the articles, it is found *not to be of the expected standard*.

A prayer for "general relief" does not authorize a judgment recognizing the plaintiffs as owners of cotton, when in their petition they aver the sale of the cotton, non-payment of the price of sale, and claim a lien and privilege on it. The two reliefs are inconsistent.

No valid judgment can be rendered against one made a party, who was not cited and has not joined issue.

Adler, Goldman & Siegel vs. Wolff et al.

It is lawful to appoint a curator *ad hoc* to an absconding debtor, where property in which
    he has an interest has been seized and he is a necessary party for the decision of the suit
Where the ends of justice require it, the Court will remand a case for further proceedings.

A PPEAL from the Civil District Court for the Parish of Orleans.
    *Lazarus*, J.

*Leovy & Kruttschnitt* for Plaintiffs and Appellants.

J. *Aroni*, B. F. *Jonas*, *Miller & Finney*, J. *Ad. Rozier*, for Defendants
and Appellants.

*Rouse & Grant* on same side:

A sale made subject to a condition which has not happened is not complete and cannot be
    enforced.   C. C. 2457, 2025 ; 1 Domat  sec. 8, p. 213.
When goods and produce are sold by weight, tale or measure, the sale is not complete until
    the things sold are weighed, counted or measured.   C. C. 2458 ; Campbell vs. Penn, 7 A.
    371 ; 12 R. 51 ; 15 A. 438 ; 17 A. 146 ; 21 A. 414 ; 1 Domat, sec. 7, p. 221.
An agreement to sell is only so far a sale as to give either party a right to claim, *recta via*,
    the delivery of the thing sold, or the payment of the price.   McDonald vs. Abert, 17 L.
    449 ; 15 A. 483 ; 1 Domat, sec. 3, p. 203.
This agreement cannot be enforced by the vendor until he has delivered, or tendered a deliv-
    ery, of the thing sold.   Goodrich vs. Pritchard, 10 A. 249.
If the thing sold is lost. even after a delivery of an order on the warehouse to the purchaser
    and before it has been weighed, the loss falls upon the vendor ; and the buyer may
    recover back a deposit paid on account of the sale.   Larue vs. Rugley, 10 A. 242.
Where one of two innocent parties must suffer by a fraud, the loss must be borne by him
    through whose conduct the fraud has been made possible.   Campbell vs. Penn, 7 A. 371.

The opinion of the Court was delivered by
BERMUDEZ, C. J.   This is an action to recover with lien and privilege
the unpaid price at which a number of bales of cotton was sold.

The main averments are that the commodity was sold to a party
whose broker, to whom an order on the press had been delivered, sub-
sequently sold it to one who afterwards pledged it to secure money
advances to him ; that the first sale was completed only when the cot-
ton was inspected and weighed, and that the suit for the price of sale
having been brought and the cotton sequestered within the proper
time, the plaintiffs must recover in preference to the last purchasers or
pledgees.

Several parties are made defendants, who (save one who was not cited
and did not appear) have set up defenses to relieve themselves from
responsibility, and in one instance, to be returned money paid for
accommodation in advance, of a conditional purchase.

There was judgment against plaintiffs as to two of the defendants,
condemning the former to a return to one of the defendants of the

money and further, of *non-suit* against the plaintiffs as to the other defendants, and also against the latter in favor of the former.

A more detailed statement of the pleadings and of the judgment is immaterial as the case is to be determined on the evidence as received, and then in part only.

We have attentively considered the voluminous evidence in the case. Eliminating redundant and cumbersome matters, likely to confuse and embarass a proper conception of the controversy, we think that the following is a faithful and concise *epitome* of the indisputable facts revealed by the transcript:

On the thirteenth of April, 1882, the plaintiffs owned 157 bales of cotton, then stored in the Crescent City Press; on that day they sold that cotton to G. Wolff, who was accompanied by his broker, G. Korndoffer, at 10¾ cents, the cotton weighing 60,804 pounds.

The plaintiffs then issued to G. A. Apps, Korndoffer's principal partner or employer, an order on the press for the delivery of the cotton. This order was received by the press on the eighteenth following, and was entered on that day on its books.

On the twenty-ninth following, having heard nothing further of the transaction, the plaintiffs called on the broker and was informed that Wolff would not use the cotton, but that one Lemoine would take it. The plaintiffs consented to a sale to Lemoine, on a partial cash payment of $3500, which was made, the purchaser reserving the right to reject if the article did not come up in grade and staple, the sale having taken place *without* exhibition of samples. Plaintiffs' classer having turned out and inspected the cotton and finding that it was not of the proper standard, notified Lemoine that it did not suit him.

On the third of May next, Korndoffer sold the cotton to F. Beer, who, representing himself to Meyer, Weis & Co., as owning 250 bales, obtained from them an advance of $7500, directing the transfer to them of the 157 bales in the press, which was done, the press issuing a receipt to Meyer, Weis & Co. for 127 only, the difference, thirty bales, having been rejected after passing the sales, for some undisputed cause or other.

Meyer, Weis & Co., press receipt in hand, transacted with Musgrove & Son about the cotton, but difficulties arising the transaction was annulled.

Things were in that condition when it was suddenly learned that F. Beer had disappeared from the cotton market and absconded.

On the eighth of May, within the five days following the sale to Beer and the transfer by Apps to Meyer, Weis & Co., advised of the facts

just recited and apprehensive of loss and injury, plaintiffs sequestered the cotton which was still in the press; on the following day the cotton was bonded by Meyer, Weis & Co., who afterwards sold it for Beer's account, the sales netting some $6725.

The plaintiffs claim a money judgment against Wolff, Lemoine, Beer and Meyer, Weis & Co. for $6536, with lien and privilege on the cotton and conclude by a *prayer for general relief*.

They insist that should the Court be unable to render the money judgment asked, they should, under that *prayer*, be recognized as the *owners* of the cotton sequestered.

· We deem it unnecessary to determine whether title to the cotton passed from the plaintiffs, through Wolff, to Lemoine and Beer.

The theory of plaintiffs seems to be, that they sold the cotton to Wolff, issuing the cotton press order for it to Apps, his broker; that this broker subsequently sold it for Wolff's account to Lemoine and next to Beer, putting it finally in the name of Meyer, Weis & Co., who received it in pledge of advances by them to Beer; that the sale to Wolff having been completed only when the cotton passed the scales, viz: on the 3d of May, 1882, and their suit having been brought within the five days following that date, they have a right to deal with the cotton, as cotton belonging to Wolff, and to enforce payment of the price of sale to him, with lien, to the exclusion of the pretensions of both Beer and Meyer, Weis & Co.

Under this aspect of the case, it is sufficient to say that the sale by plaintiffs to Wolff, does not appear to have been annulled by their consenting to accept $3500 from Lemoine, procured as a purchaser by Wolff's agent, for there is nothing to show that this purchaser ever assumed Wolff's liability and was accepted by plaintiffs as a delegated debtor, in his lieu and stead to all ends and purposes. His purchase of the cotton depended on a contingency. It was eventual.

The cotton, after inspection, not having been found of the quality desired, he was released and is entitled to recover back the $3500 which plaintiffs admit to have received from him.

It is impossible for us to render any judgment against Beer who is *a real* defendant and *necessary as such* in the case. The judgment appealed from refuses to confirm the *default against him*; but we have carefully searched the transcript and have failed to discover that any citation was issued and served, or appointment of a representative made, so as to bring him in court. In the absence of any appearance on his part, *no* judgment can be rendered against him.

Neither can we render a money judgment against Meyer, Weis & Co., for there is nothing to show a purchase by them of the cotton from plaintiffs, and we are impotent to recognize the lien claimed on that cotton, even if the same exists, in the absence of Beer, who has an interest at stake.

Meyer, Weis & Co. ask to be recognized as the owners of the cotton put in their name by Beer's orders and to be entitled to recover from Beer the amount of their advances to him. Beer was not cited to answer this demand and has not joined issue.

The same reason which prevents the rendition of any judgment in favor of plaintiffs against Beer, opposes any decree against him on behalf of Meyer, Weis & Co.; so that, we find ourselves in the legal impossibility of determining the important and interesting questions of law which were so ably and so elaborately urged by the different counsel engaged in the case.

We are, then, now driven to the consideration of the question: whether under the prayer for *general relief*, the plaintiffs are entitled to ask to be recognized as the owners of the cotton sequestered.

It is true that, under such prayer, suited to the nature and justice of the case, the Court may render such judgment as would be given in a non-suit, to avoid a circuity of actions. Such prayer authorizes all ordinary decrees, for accessary rights, which the pleadings and evidence may justify and which flow from the law; but it does not justify a decree inconsistent with the special relief sought.

In the present instance, the plaintiffs have avowed, unqualifiedly, the sale of the cotton; the non-payment of the price; a privilege and lien on the same for such payment, and have prayed accordingly. It is manifest that, after such averments, plaintiffs cannot pretend to be entitled to a recognition as owners of the cotton just alleged by them to have been sold.

But had averment and prayer been made accordingly, in the alternative, how could such judgment be rendered declaring the plaintiffs to be the owners of cotton which the evidence shows was sold to one who was not cited and who has not joined issue.

The reason which forbids a money judgment against Beer, proves an insuperable impediment in the way of the rendition of *any* judgment against him, which would declare him not to be the owner of the cotton and which would recognize title thereto in either the plaintiffs or in Meyer, Weis & Co.

Had a curator *ad hoc* been appointed, all this difficulty might have been avoided.

We think that the ends of justice require that this case be remanded to the lower court, with leave to plaintiffs and all others concerned to apply for the appointment of a curator *ad hoc*, on a proper showing to the court, to represent the absent or absconding debtor, contradictorily with whom, as to him, the case will then be tried anew.

There is no necessity or propriety of trying the case *de novo* as to Lemoine who should no longer be detained, to no advantage, as a factor in this controversy.

The judgment in his favor, discharging him and condemning plaintiffs to return to him the $3500, is correct and should not be disturbed.

It is, therefore, ordered and decreed that the judgment appealed from, as far as it is rendered in favor of A. Lemoine, and condemns the plaintiffs to return to him the sum of $3500 with interest from judicial demand, be affirmed.

It is further ordered and decreed that, in other respects, said judgment be reversed and that this cause be remanded to the lower court to be further proceeded with according to the views herein above expressed and according to law, the plaintiffs to pay costs in both courts.

## On Application for Rehearing.

The plaintiffs charge error in this:

1. That the Court erred in deciding that Beer has never been cited in this suit.

2. That the court erred in deciding that Ferdinand Beer is a necessary party to this suit.

3. That the Court erred in remanding the cause as to Wolff, even if it were correct in doing so as to the other defendants.

On the other hand, Wolff claims that the case should have been decided finally and in his favor.

I.

Since the decision of the case, the plaintiffs have filed in this Court a document purporting to be a copy of the citation issued to Beer and of the return of the service on him.

The fact of the production of such document in this Court, and at that stage, proves that the transcript contained neither the citation nor the return when the case was determined and that this Court was right when it said that Beer did not appear to have been cited and served.

But it is claimed that, if the transcript does not contain the citation and the return, it is because the omission of the same therefrom is justified by the sixth clause of the first rule of this Court.

That rule dispenses with the copying into the transcript of citations and returns, only where issue has been joined by the appearance of the party asked to be cited. It does not apply to cases in which such party makes default.

The statements in the briefs for a rehearing that the motion for a default was made and granted is not verified by the record.

Where a motion is made for a default, it should be noted on the minutes of the Court. It is true that there is found in the note of evidence mention of a verbal application for a default, but this is irregular and void. The law authorizes the plaintiff, if the defendant do not appear, after the delay allowed, to take a judgment by default, which can be *obtained* by *moving* for it in court. It suffices that such judgment appear by a statement on the records of the court that the defendant has failed to appear.

The law requires that all judgments, whether interlocutory, final or definitive, shall be correctly entered on the records, that is: the *minutes* of the court. The same rule must be observed in relation to all orders or mandates given by the court, as well as to all motions made by the parties to the suit. C. P. 310, 311, 533, 534, 538, 544; 6 R. 9; 8 N. S. 339; 15 A. 164.

The case cannot be considered at issue in the absence of a judgment by default regularly entered, or of an appearance by the defendant. The joining of issue is in fact the foundation of the suit, as citation is that of the action. C. P. 360, 359.

## II.

The plaintiffs thought that Beer had an interest in this suit, for they averred against him, prayed that he be cited and condemned to pay them the amount of their claim.

Beer is alleged by the plaintiffs to have acquired the ownership of the cotton. It is on that cotton that plaintiffs claim a lien and privilege. His property is in control of the court and at stake. He may have defenses. He may allege and show that Wolff has paid plaintiffs, that he paid Wolff, or that the sale to him is a nullity; or that he owes Meyer, Weis & Co. nothing; that he is the owner of the cotton which is free from all claim from plaintiffs or Meyer, Weis & Co.; or he may set up some other defense which it is difficult to conjecture or anticipate. No judgment can be rendered in favor of plaintiffs subjecting the cotton sequestered in the hands of Meyer, Weis & Co. to the lien claimed, without affecting some of Beer's rights to it. 12 Wheat. 198; Daniel Ch. Pr. vol. 1, p. 246; 34 A. 421; 32 A. 548; 20 A. 383.

The plaintiffs allege that the cotton was *sold* to Beer, by whose order it was transferred to Meyer, Weis & Co., and the latter ask judgment against him for the amount of their advances.  The fact that Beer was not cited on the counter demand of Meyer, Weis & Co. is no reason why he should not be represented and why the latter should have no recourse against him, under the circumstances of this case.  The plaintiffs thought that they could not trace their cotton to Meyer, Weis & Co. unless through Beer, and could not ask judgment affecting that cotton without bringing him formally in, and they have accordingly formally done so.

### III.

The plaintiffs claim that they should not be denied a personal judgment against Wolff, with recognition of their lien and privilege on the cotton.

But it is impossible to admit that privilege in the absence of Beer, whose cotton it may be.

Had the plaintiffs waived that lien, there might have been no objection in rendering a judgment on the claim against Wolff.

This Court cannot render the personal judgment and next inquire into and pass upon the question of privilege.  It will not try and decide a case piecemeal against the same defendant.

### IV.

Wolff insists that judgment should have been rendered in his favor. It is difficult to perceive how such conclusion could have been reached.

The difficulty in the way of a definitive judgment between him and the plaintiffs consists in the impossibility of rendering a judgment which would recognize the lien claimed without affecting the rights of Beer, who was made and remains a party; who is here represented by plaintiffs as having been cited and served and who has certainly an interest in resisting the claims of both plaintiffs and Meyer, Weis & Co.

If it be true that Beer was cited and served, it will be incumbent on plaintiffs to obtain a judgment in lower court, on proper showing, before proceeding with the case on the remanding thereof.

Had the citation and the return, the motion for a default and a judgment thereon, been regularly before us, the case could have been easily disposed of.  In the absence of such essential proceedings, our previous decree cannot be altered.

Rehearing refused.