McIlvaine & Speigel vs. Legaré and Godchaux.

## No. 9078.

36  359
51  1743

36    359
122    676

### McILVAINE & SPEIGEL VS. MRS. M. C. LEGARÉ AND LEON GODCHAUX.

A purchase of movable effects in another State, for delivery in this State, to be paid for on inspection, evidences a contract to be executed in this State.

The vendor of such property is entitled, under our laws, to the vendor's privilege on the movable effects to secure the payment of the stipulated credit instalments.

APPEAL from the Twenty-second District Court, Parish of Ascension. *Cheevers, J.*

*Edward N. Pugh* for Plaintiffs and Appellants:

#### FACTS.

1. This case was remanded for the taking of further testimony as to whether the contract of sale between plaintiffs and Lagaré was consummated in Louisiana or Ohio. 34 A. 926.

2. An *executory* contract between plaintiffs and Legaré was made in Ohio, *subject to the suspensive condition* that the boilers were delivered in Louisiana to the vendee and found, after *personal inspection and view, in good order and satisfactory.* The contract only became an *executed* one and the property transferred on the fulfilment of these conditions *in Louisiana,* the risk up to that time being on the vendors. 31 A. 599; C. C. 10; 4 A. 729; Benjamin on Sales, sections 319, 651, 308; 21 A. 412; C. C. 2471, 2460, 2044; 22 Wall. 180.

#### LAW.

A. Agreements legally entered into have the effects of law on those who have formed them. They cannot be revoked, changed or altered unless by mutual consent of the parties.

B. Contracts are always presumed to be made with reference to the laws that govern them and their subject matter, which *laws enter into and form a part and portion thereof.*

C. When there exists all the conditions which by law create and bring about a *certain legal result,* the effects flowing legally from such a state of facts will *follow, whether the parties foresaw or intended them or not.* Opinions of parties have no effect on legal rights. A.— C. C. 1901. B.—Hen 1012, No. 3; 33 A. 19; 34 A. 675; 99 U. S. 323; 98 U. S. 365; 20 A. 180; 12 A. 720—"always in accordance with and submission to *all the laws* that may in any way effect his contract." C.—30 A. 643, 654; 29 A. 347; 32 A. 217; 27 A. 611; 21 A. 361.

Things of which the buyer reserves to himself the *view* and *trial,* although the price be agreed on, *are not sold* until the buyer be satisfied with the trial, which is a kind of *suspensive condition* of the sale. C. C. 3044, 2060, 2471; Benjamin on Sales, sections 319, 651, 308; 21 A. 413; C. C. 2043, 2044.

Where obligation has been contracted on a *suspensive* condition, the thing which forms the subject of the contract is *at the risk of the obligor* until the event which forms the condition has happened. C. C. 2043, 2044, 2471.

The acceptance to form a contract must be in all things conformable to the offer. It is *indivisible* and must be accepted in its entirety. C. C. 1805.

If he has not accepted the contract according to its terms, there is no contract, etc.; if he has accepted in the only way in which he could accept, he is bound by the act, and cannot gainsay its meaning and purport. 21 A. 622; 30 A. 253; 30 A. 766; 1 L. 188; 33 A. 581; Benjamin on Sales, section 39; C. C. 1811; 33 A. 580; Hen. p. 1002, Nos. 22, 16.

Where a contract of sale is entered into in one State, to be performed in another, the laws of the *latter* govern its performance. A contract of sale made in Ohio to be executed in *Louisiana,* and upon inspection and view by the vendee, and his acceptance *there* of the property sold, if the same be in good order and satisfactory, falls under the law of Lou-

isiana, and the vendor's privilege attaches. Hen. p. 1015, No. 10; 106 U. S. 128; 91 U. S. 406; 31 A. 599; 17 L. 590; 10 A. 729: 22 A. 419; C. C. 10; 25 A. 422.

*R. N. Sims* for Defendants and Appellees :

1. The evidence shows conclusively that the *locus contractus* was Cincinnati, in the State of Ohio. The sale was made and consummated there. 2 A. 984; 8 M. 134; 25 A. 232; C. C. 2456.

2. The Plaintiffs made no effort to show that there exists a vendor's privilege upon movables under the laws of the State of Ohio.

3. Such a privilege is *unknown to the common law.* 8 Martin, 135; 2 A. 335, 984; C. C. art. 10; 16 A. 158; 25 A. 232.

4. This Court will take *judicial notice* thereof, and that the common law forms the basis of the jurisprudence of Ohio. 2 A. 335; 16 A. 158; 8 Mart 135; 2 A. 934.

5. All of the above decisions under third and fourth heads were expressly reaffirmed by this Court in the original decree herein, and those questions are settled irrevocably so far as this case is concerned.

6. The plaintiffs are not seeking to enforce an alleged privilege against J. C. Legaré or Mrs. Legaré, but against Leon Godchaux, *a third person.*

7. Privileges are to be *strictly construed.* C. C. 3185, 3312; Hennen 1238, No. 3, and cases noted; Succession of Cox. 32 A. 1035.

8. As against *third persons* they must be *conclusively established.* 10 A. 429; 13 A. 352.

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiffs seek to subject to their vendor's privilege, three sugar-house boilers and accompanying outfit which they sold and delivered to the defendant, Mrs. Legaré, on a plantation which was subsequently purchased from her at a private sale, by the defendant, Godchaux.

The cause was before us last year, and it was then remanded to the lower court for the purpose of taking testimony to show the place where the contract was entered into or completed.   34 A. 923.

After trial under that order, the district court found that the contract had been made and executed in the State of Ohio, and held that under the common law, which prevails in that State, plaintiffs had no privilege on the boilers.   It, therefore, rejected plaintiffs' claim for a privilege, and they appeal.

The sole question presented involves the discussion of the exact place at which the contract was completed.

The negotiations between the plaintiffs, who are boiler makers in Cincinnati, Ohio, and the defendant, Mrs. Lagaré, who was at that time a planter, and a resident of the parish of Ascension, in this State, were carried on exclusively by correspondence.

Their letters show that the boilers were to be made to Mrs. Lagaré's order, and to be delivered to her on a steamboat at Cincinnati, where

they were to be paid for on delivery, one-half cash, and the other half by her note, payable in December following.

Had the correspondence ceased at that point, and had the contract been closed and executed under those stipulations, the controversy would undoubtedly fall under the laws of Ohio, and the case would be with the defendant, Godchaux.

But the record shows that in her letter of May 27, 1877, Mrs. Legaré in ordering the boilers under plaintiffs' conditions, refers them for the cash installment to her merchant or agent, L. Godchaux, of New Orleans, and requests them to write to the latter so as to arrange preliminaries for the payment in question. Conforming to her desires plaintiffs wrote to Godchaux, under date of June 1, 1877, in the following words:

"We have contracted with S. Cecil Legaré" (Mrs. Legaré's attorney-in-fact) "for the construction of three boilers, drums and fixtures, for the Souvenir Plantation. He asks us to advise you of same, and directing to draw on you for one-half amount ( $1075 ) when outfit is shipped. We expect to have all complete and ready in about three weeks."

This notice was answered by Godchaux on June 4, as follows:

"Your favor of 1st inst. came duly to hand. We will pay your drafts ($1075) for one-half of Dr. S. C. Legaré's contract with you, against Dr. Legaré's receipt of the boilers, etc., in good order and satisfactory."

It is too plain for argument, that the terms of this letter, if accepted by the contracting parties, operated a most material modification of the original contract which the latter had contemplated.

The evidence in the record shows to our entire satisfaction that the conditions therein contained, were accepted by both parties.

True, the plaintiffs made no answer to the new proposition, but they acted under it, and hence they gave an implied but unmistakeable assent thereto. C. C. 1811.

Without the assistance of her merchant, Mrs. Legaré was powerless to comply with the stipulation of a cash payment of the boilers on delivery. Hence she referred plaintiffs to him for his consent to advance the necessary funds, and in giving his assent, he dictated his own terms, which practically altered and essentially modified the contract, which would have been entirely abrogated without his concurrence.

Under the original stipulations, the boilers were to be delivered and paid for in Cincinnati, and would thus have become the property of Mrs. Legaré before leaving that city. Under Godchaux's stipulations they remained plaintiffs' property until delivered to and accepted by

Mrs. Legaré, or her agent on her plantation. Had the boilers on inspection been found not to be of the prescribed dimensions, or of the required quality of material and workmanship, the delivery and the contract would not have been completed, and the payment would have been withheld. Otherwise, if the boilers had been considered as delivered by shipment at Cincinnati, in accordance with the original stipulations.

The terms required by Godchaux were brought to the notice of Mrs. Legaré, who, of course, acceded thereto.

Her assent is shown by her subsequent correspondence and by a formal notice which she gave to plaintiffs, on the day that the boilers were received on her plantation, at which time only, and not before, she authorized the latter to draw on Godchaux for the cash payment.

The acceptance of those terms by the plaintiffs is shown by the fact of their shipping the boilers without exacting the previously stipulated cash payment, and by the additional fact of not drawing for the same before receipt of the notice which was sent to them by Mrs. Legaré, on the 30th of August, 1877. The boilers had been shipped as far back as the 14th July—the delay of delivery having been caused by the sinking of the boat on which they had been shipped.

Had they been lost *in transitu*, the loss would, beyond a doubt, have been that of plaintiffs, under the contract as modified by the terms imposed by Godchaux, himself. Such was the very object of the stipulations contained in his letter to plaintiffs. He cannot, now, escape the consquences of his own acts in the premises.

The direct and immediate effect of the modification of the contract, made it only executory and subjects it to the laws of Louisiana, governing such contracts. The new stipulations, emanating from Godchaux and accepted by all parties, engrafted a suspensive condition in the contract, under which it could not be executed before delivery of the things sold, in this State. Hence the conclusion that it thus became a Louisiana contract, and that its enforcement must be tested under the laws of this State. C. C. 2043, 2044, 2471; Beirne & Burnside vs. Patton, 17 La. 589; Overend Gurney & Co. vs. Robinson, 10 A. 728; Maillard vs. Nihoul, 21 A. 412; Duncan vs. Helm, 22 A. 418; Chaffe & Sons vs. Heyner, 31 A. 599; Benjamin on Sales, sections 308, 319, 651.

We have given due consideration to the authorities invoked by defendant's counsel in support of his proposition that this contract must be construed under the laws of Ohio, but the decisions which he has quoted present cases of purchases made by residents of this State, in

other States of the Union and in foreign countries, and they present contracts which contained no stipulations of a suspensive condition, contracts in which the purchasers had not even received the right of inspection of the articles bought by them. Whiston vs. Stodder, 8 M. 134; Colt vs. O'Callaghan, 2 A. 984; Brent vs. Strouse, 16 A. 158; Loeb vs. Blum, 25 A. 232.

Under the circumstances of this case, we conclude that the contract could be executed in Louisiana only, and that plaintiffs are, therefore, entitled to the protection of our laws on the question of privileges on movables.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now decreed that a privilege be recognized in favor of plaintiffs, on the boilers, drums and fixtures sold and delivered by them to Mrs. Legaré, on the Souvenir plantation in the parish of Ascension, to secure the sum of one thousand and seventy-five dollars, with interest of eight per cent per annum, from January 5, 1878, until paid, together with the costs of this appeal, the costs incurred in the lower court in the present case, and one-half of the costs incurred in the first or previous trial below of this case.