CALDWELL & CO.

v.

DESCHANEL INTERNATIONAL CORP.

EAGLE ROLLER MILL CO., Intervenor

———

(June 20, 1927. Opinion and Decree.)

———

(*Syllabus by the Court*)

1. **Louisiana Digest—Conflict of Laws— Par. 2.**

Where contract of purchase contains the stipulation that goods shall be delivered at shipside in New Orleans, the contract is a Louisiana contract and the vendor is entitled to a privilege on the proceeds of goods for the unpaid purchase price, although confirmation of sale was made in another state.

Appeal from Civil District Court, Division "E". Hon. Wm. H. Byrnes, Judge.

Action by Caldwell & Company, Inc., against the Deschanel International Corporation. Eagler Roller Mill Company, Intervenor.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Terriberry, Rice & Young, of New Orleans, attorneys for plaintiff, appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, attorneys for defendant, appellee.

Bernard Titche, for curator ad hoc.

JONES, J. In this suit plaintiff and intervenor, both attachment creditors, are claiming priority of privilege on the proceeds of certain flour, originally bought by the defendant from intervenor and sold by the civil sheriff here under an agreement between the parties, pending a decision on the merits of the controversy.

On December 8, 1920, plaintiff, a New York corporation, doing business in this city as forwarding agents, sued defendant for one thousand sixty-eight and 43-100 ($1068.43) dollars, amount due for forwarding a prior shipment and attached two carloads of flour then in the hands of the I. C. Railroad Co., the carrier which had brought the flour here from intervenor's mill in Minnesota. A writ of attachment was issued on the ground of nonresidence and a local attorney was appointed to represent the defendant. On January 4, 1920, this representative filed an answer denying the allegations of plaintiff's petition on information and belief.

On April 18, 1921, intervenor, a Minnesota corporation, intervened in the suit for four thousand, eight hundred and fifty ($4850.00) dollars, the unpaid purchase price of the two carloads of flour and attached the same flour then in the hands of the sheriff. It prayed that its vendor's lien and privilege be recognized or, in the alternative, if the court should hold that it had no vendor's lien and privilege on the flour, then that its right of stoppage in transit be recognized and the sheriff be ordered to turn over to it the flour, or, as second alternative, if the court should deny both the vendor's lien and the right of stoppage in transit, then

it prayed that the contract be rescinded for non-payment of purchase price. To this petition it attached a copy of confirmation of sale of each car and copies of the drafts for purchase price of each car, which it had drawn on defendant.

In this intervention it was further alleged as follows:

(1) That defendant had not paid the purchase price and that it had notified intervenor that it was unable to do so.

(2) That said flour was sold for delivery at shipside in New Orleans and therefore the contract was governed by the laws of Louisiana.

(3) That defendant was at the time of the sale and is now insolvent.

The same curator was appointed, and on July 11, on joint motion of all parties interested, the court ordered the flour sold at public auction after five days' advertisement. On March 15, 1924, an agreed statement of fact was filed by plaintiff and intervenor, but defendant offered no evidence.

On April 8 plaintiff which had been served with a copy of the intervention filed an answer thereto, but defendant did not answer it. In its answer plaintiff admitted that the flour had been purchased for export and drafts drawn with bills of lading attached, as alleged, and that intervenor had obligated itself to ship and deliver said flour to the Deschanel International Corporation, F.A.S. New Orleans, a term meaning delivery on wharf in that city, but denied either vendor's lien, right to stoppage in transit or right to rescission of contract.

The trial judge decided that intervenor had a vendor's privilege on the flour, because title did not pass and was not intended to pass until the flour was delivered at New Orleans. He accordingly gave judgment for both plaintiff and intervenor for amounts claimed and ordered intervenor to be paid first. He did not pass either on the right of stoppage in transitu or the right to rescission of contract, but distinctly reserved those issues for the appellate court, if that tribunal should hold differently on the vendor's privilege.

From that decision the plaintiff has appealed to this court.

The agreed facts are as follows:

On November 6, 1920, The Deschanel International Corporation of New York, hereinafter called "Deschanel", wired to the Eagle Roller Mills of Minnesota, a flour manufacturer, hereinafter called the "Intervenor", offering to purchase five hundred (500) bags of flour, marked "Camuri", for shipment to New Orleans in accordance with telegram, reading:

"Enter additional order one thousand bags candeal five hundred bags Camuri one hundred ninety-six pounds immediate shipment New Orleans. Wire whether possibility shading prices."

On November 8, this offer was replied to by the intervenor by wire as follows:

"Telegram received, market easier today, therefore have entered additional thousand candeal at ten eighty and five hundred Camuri at nine ninety-five. Thank you."

On November 15, Deschanel Company forwarded to intervenor a confirmation in accordance with this telegram, stating thereon:

"Confirming our wire of 11/6/20", setting forth the terms of the sale, and providing thereon, among other stipulations, the following:

"FAS NEW ORLEANS,"

"Routing and shipping instructions will reach you directly from our shippers at New Orleans,

"Terms of payment—Acceptance draft—60 D/D."

On November 10 Deschanel wired intervenor, asking for prices on additional 1000 bags of Camuri, as follows:

"Wire lowest prices best delivery additional thousand bags each Candeal Camuri hundred ninety-six pound bags, shade prices utmost to enable us to confirm orders."

Intervenor answered this wire by wire as follows:

"Subject confirmation offer additional thousand bags each Candeal ten thirty Camuri nine forty-five FOB New Orleans shipment your option within ninety days."

The offer therein contained was accepted by the Deschanel Company, who wired intervenor as follows:

"Confirm sale thanks wire lowest after market closes today."

Thereafter Deschanel forwarded confirmation to intervenor of sale of the 1000 bags, stating thereon:

"Confirming our wire of November 11, 1920."

"Immediate shipment to New Orleans. Goods booked per SS COLUMBIA, sailing from New Orleans 11/30."

"F.A.S. New Orleans."

"Routing and shipping instructions will reach you direct from our shippers at New Orleans."

Also:

"Acceptance Draft 60 D/D."

On November 8, 1920, under the contract confirmed on that date, intervenor loaded 250 bags of flour taking therefor a bill of lading to its own order, notify Caldwell & Company, who were agents of Deschanel Company of New Orleans, and that again on November 24, 1920, under the contract confirmed November 18, the intervenor loaded 250 bags of flour, taking the same kind of bill of lading. Both of these cars were shipped to New Orleans, and all freight was paid by intervenor at the time of shipment. Intervenor after shipment of each car of goods drew a draft upon Deschanel International Corporation for the purchase price thereof, which draft read: "60 days after arrival of goods, pay to the order of Eagle Roller Mills," and notation thereon, "Bill of lading attachde covering car." These drafts with bills of lading attached were forwarded to Deschanel Company at New York and were accepted in accordance with their provisions, the first being accepted December 1, 1920, payable February 1, 1921, and the second December 2, 1920, payable February 2, 1921. These drafts appear in the record as Exhibits "C" and "D" respectively. Intervenor received no payment on these drafts and has never been paid the purchase price. On acceptance of the drafts, the bills of lading were surrendered to Deschanel, who forwarded them to its agent, Caldwell & Co., at New Orleans.

The flour was transported by the Illinois Central Railroad to New Orleans and Caldwell & Co., instead of obtaining possession of it on behalf of its principal, Deschanel, caused a writ of attachment to be issued against the flour on a debt due by Deschanel to Caldwell & Co. arising out of another transaction, surrendered the bills of lading to the sheriff and seized the flour in the hands of the railroad company. The bills of lading were not offered in evidence, because they had been delivered to the sheriff, but the flour was

sold by consent of all parties and the proceeds are to be distributed.

Plaintiff's able attorney argues that the contract of sale was completed and title passed when the bills of lading, endorsed in blank, were delivered and drafts accepted by defendant in New York, on December 1, 1920, to be paid February 1, 1921, and the other on December 2, 1920, to be paid February 2, 1921, that delivery in New Orleans was merely incidental and had no legal effect on the contract which had already been completed in New York.

In support of this contention he cites the following four Louisiana cases:

Whiston vs. Stodder, 8 Mart. (68) 95;

Bren & Son vs. Shouse, 16 La. Ann. 158;

Colt vs. O'Callaghan, 2 La. Ann. 984;

Show vs. Oakey, 3 Rob. 31.

In the first of these cases the contract was executed and completed in London, England, and the carrier became the agent of the purchaser. In the course of the opinion the court uses the following language:

"It appears by the evidence contained in the record that the insolvents were in the habit of ordering goods to be sent them in New Orleans by their correspondents, the appellees, merchants of the city of London in the kingdom of Great Britain, who executed such orders and received payment by remittances in the usual course of trade between said places, and that at the time of the failure of the appellees, certain parcels of the goods transmitted to them, as above stated, were found unaltered in their possession and passed into the hands of the syndics on which plaintiffs claim a privilege."

In the brief of defendant, quoted in the report, we find the following statement of fact, which we must take as true as it is not controverted by plaintiff in his reply

brief and is sustained by the above quoted extract from the opinion:

"The goods were ordered by the insolvents; the plaintiffs accepted the order, purchased the goods, and shipped them, to the address, and upon the account and risk of the insolvents; and payment was to be made in England by bills of produce. It is well known that a bill remitted is not payment, unless paid or agreed to be received as payment; and produce is not payment until sold, when the proceeds are applied to the extinguishment of the debt. In every part of this business, therefore, it was an English transaction. The order from the insolvents gave to the plaintiff no right, until that order was accepted and executed in England. Their rights then became perfect.

"The reception of the goods in New Orleans was not necessary to entitle them to demand payment; for when goods are consigned under an order, the delivery to the carrier is a delivery to the consignee; the property immediately vests in him, and the goods are at his risk. In purchasing the goods from the manufacturer the plaintiffs acted in the capacity of mandataries, and in that capacity they acted in England, and the payment was also to be made in England."

In Shaw vs. Oakey, 3 Rob. 361, defendants in New Orleans ordered goods from plaintiffs in New York to be paid for in six months. The order was received and executed and partial payments were made. The only point before the court was the allowance of interest.

In Colt vs. O'Callaghan, 2 La. Ann. 984, Colt, the plaintiff in New York, sold to O'Callaghan, the defendant in New Orleans, certain wire. O'Callaghan paid the freight and the court found that the wire was delivered in New York.

In the last case cited, Brent & Son vs. Shouse, 16 La. Ann. 157, all the parties

interested resided in Kentucky and the sale was made· in that state. The court simply held that the fact that a portion of the goods were at the time of the sale in New Orleans made no difference, because movables had no siteis.

The above analysis shows that these cases differ in the basic facts and are therefore not controlling here.

It will be noted that the offer and acceptance on each car was crystallized by a letter from buyer to seller confirming the contract and that each confirmation contained the following stipulation:

"F. A. S.—New Orleans.

"Routing and shipping instructions will reach you directly from our shippers at New Orleans.

"Terms of payment, acceptance draft 60 D.D."

The letters F.A.S. are explained in the Exporters' Encyclopedia of 1922 as follows:

"The letters F.A.S. are used in making export quotations as an abbreviation of the phrase, 'free alongside ship'. Under an 'F.A.S.' quotation the seller undertakes to transport the goods to main port or seaport; to store them in warehouse if necessary; to bring them alongside the carrying vessel, either in a lighter or along the dock, and to be responsible for loss or damage until such delivery is effected."

The correctness of this definition is not disputed and it is admitted that the abbreviation "60 D/D" means sixty days from date of delivery.

The confirmation of the second order, in addition to containing the above provisions, stated:

"Goods booked per S/S Columbia, sailing from New Orleans 11-30."

From the letter filed in evidence, marked "Intervenor 9," written by Deschanel to intervenor, and intervenor's reply thereto under date of November 15, marked "Intervenor 11," it will be seen that the parties understood that all shipments were booked for sailing on the S/S Columbia leaving on November 30.

In the stipulation of counsel, it is admitted that the intervenor paid the freight on the shipments to New Orleans.

We think that all of the above provisions of the contract are conclusive that, in accordance with the terms thereof, the shipper, intervenor, was to remain responsible for the goods, was to retain control and dominion over the goods until they arrived and were delivered in New Orleans at ship side.

We are of the opinion that these contracts were Louisiana contracts, because the last steps in the completion thereof were to be performed in Louisiana. In other words, we hold that the law of the place of performance must control, although the letters of confirmation were written in New York.

In this holding we are following not only the Civil Code of Louisiana and the decisions of our Supreme Court, but also the conclusions of the best writers on "Conflict of Laws" and the decisions of the U. S. Supreme Court.

The first two paragraphs of Art. 10 of the Civil Code read as follows:

"The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.

"But the effect of acts passed in one country to have effect in another country is regulated by the laws of the country where such acts are to have effect."

Minor, in his Conflicts of Law, p. 295, Sec. 128, states this principle:

"The locus contractus of a sale is the place where the sale is finally completed.

Until that time the contract is in juri. The title has not passed. It is not until the vendor has done everything in connection with the transfer necessary to pass title that the sale is completed. The place where the final act essential to this result is performed is the locus contractus. The place at which the order is given, or from which the order is sent to the vendor, however important to the determination of the locus contractus of an executory contract, furnished no safe guide in fixing the place of an executed sale."

Again, at page 296:

"It is to be observed, furthermore, in connection with conveyances and sales of personalty, that not only does the lex loci contractus govern the substantial validity of the transfer as between the parties, but it also determines the effects of the contract, and in general the interpretation to be placed upon the terms used, when an ambiguity arises touching the legal signification to be attached to them."

And, again, at page 373, 157:

"By parity of reason, the question whether goods shipped in one state upon an order from another constitutes a sale in the former state depends upon the further question whether the parties have done every act necessary to make a binding sale before the goods leave the former state. Thus if the consignor there delivers the goods to a carrier as the agent of the consignee, the sale is complete there; if the carrier is the agent of the consignor, the sale only becomes complete upon the delivery by the carrier to the consignee or his agent, and the place where that occurs is the locus celebrationis."

One of the earliest cases on the question is that of Overend Gurney & Co. vs. Robinson and Olroyd, 10 La. Ann. 728, in which an executory agreement for sale was entered into in New York for shipment and delivery in New Orleans of certain goods. The court held that the sale being completed in New Orleans constituted it a Louisiana contract, and that the vendor's privilege applied. The court stated as follows:

"But here it seems that there was only an executory contract made in New York. The goods which have been identified were not shipped by Houghwout from New York to Robinson & Olroyd, under an absolute contract of sale. They were shipped to an agent of the consignee, in New Orleans, with special instructions not to deliver them to Robinson & Olroyd, until the latter should have complied with certain specified conditions about furnishing security. The sale was therefore completed and delivery made in Louisiana, and by the law of Louisiana, the vendor's privilege attached. There is no error then in this part of the judgment."

In this Overend case it was incumbent upon the purchaser to give certain security in Louisiana, which was the fact which controlled the court in determining that it was the intention of the parties that this agreement should be completed in Louisiana; that title should not pass until the security was given.

In the case of McLlvain & Speigel vs. Mrs. M. C. Legare and Leon Godchaux, 36 La. Ann. 359, a contract was entered into by correspondence between the purchasers in Louisiana and the sellers in Cincinnati, under which certain boilers were to be sold and delivered to the purchaser and paid for in Cincinnati. Thereafter, the contract was modified so that the boilers were to be delivered in Louisiana, and paid for there. The court properly held that the contract, by its modifications, was an executory contract for completion in Louisiana, and so governed by the law of Louisiana, and that except for the modifications of the terms of the agreement, it would have been a Cincinanti contract, for-

performance there, in accordance with its terms, and that the Louisiana law would not have applied.

The court said:

"Under the original stipulations, the boilers were to be delivered and paid for in Cincinnati, and would thus have become the property of Mrs. Legare before leaving that city. Under Godchaux's stipulations they remained plaintiff's property until delivered to and accepted by Mrs. Legare, or her agent on her plantation. Had the boilers on inspection been found not to be of the prescribed dimensions, or of the required quality of material and workmanship, the delivery and the contract would not have been completed, and the payment would have been withheld. Otherwise, if the boilers had been considered as delivered by shipment at Cincinnati, in accordance with the original stipulations."

On this point see also Pritchard vs. Norton, 27 L. Ed. 104 U. S. Supreme Court, and Hall vs. Cordell, 1142 U. S. 116, 35 L. Ed. 956.

In this view of the case, as purchase price of the flour had not been paid, intervenor unquestionably had a vendor's privilege on the flour and is therefore entitled to be paid first, although the bills of lading endorsed in blank by the shipper had been received in New York by the buyer and the sixty-day drafts had been accepted by him.

We do not find it necessary to pass on the fact whether title to the goods had passed to the buyer, when the goods were seized in New Orleans, because that fact is presumably admitted by intervenor when he sues the defendant as owner and only claims a privilege. See Adler et.al. vs. Wolff et al., 36 La. Ann. 169.

As we have found with intervenor on his first contention, we do not find it necessary to consider either of his alternative prayers.

For above reasons the judgment is affirmed.