### No. 2663.—STEPHEN DUNCAN *v.* JOHN N. HELM.

In a contract made between parties residing in Mississippi, by which notes and mortgage are given on property situated in Louisiana, to be entirely executed in this State, the question of usury must be governed by the laws of Louisiana, where the contract is to have effect.

The act of 1860, abolishing the penalties in the act of 1854 (re-enacted in 1855), against usurious contracts, only relieved parties from such penalties for making usurious contracts after its passage. It is not retrospective, and has no effect on usurious contracts made before its passage.

Payments made on obligations must be applied to that which is lawfully due, and not to usurious interest; and where an over payment of the debt due has been made, excluding the unlawful interest, it may be reclaimed by the debtor, if demanded within one year.

APPEAL from Thirteenth District Court, parish of Tensas. *Hough, J. Farrar & Reeves*, for plaintiff and appellant. *Aroni & Collier* and *Semmes & Mott*, for Helm, defendant. *Mayo & Spencer*, for Mrs. Staunton, defendant, appellees.

LUDELING, C. J. This case was before the court in 1869, and it was remanded in order to make the heirs of the plaintiff (who had died before judgment in the district court) parties to the suit.

The plaintiff sues to recover the amount of a note, $9750, less $5000 paid, and the amount of another note for $9000, with eight per cent. interest per annum after their maturity, respectively, to wit: first of January, 1861, and first of January, 1862.

The defenses set up are, prescription and usury. Citation in this suit was served on the nineteenth of March, 1866. The note due January, 1861, was therefore prescribed (if it had not been paid); the other note was not. In order to determine whether or not the contract is usurious, it is necessary first to ascertain if the contract is governed by the laws of Louisiana, or by those of the State of Mississippi.

The evidence shows that both parties to the contract resided in the State of Mississippi. John N. Helm applied to Stephen Duncan, in the State of Mississippi, for a loan of money, in 1854, and the following letter was the result:

"My DEAR SIR—I inclose memorandum of several notes for your signature; when returned to me with the mortgage, I will give you my bill on New Orleans, payable first of January, 1855, for thirty thousand dollars.

"I inclose a letter authorizing Col. Shaw to accept the mortgage for me. If this loan will be any accommodation to you, it will give me pleasure to have been the means of procuring it for you. * * * The loan to you absorbs every dollar I have, or expect to have, for investment for others this winter. Please fill up the blanks for dates of notes. I have made it December, because I thought this would give you full time.

"I am yours,     STEPHEN DUNCAN.

"Natchez, November 23, 1854."

The evidence shows that Helm owned property in Louisiana and in Mississippi, and that, when he applied for the loan, he had offered Duncan choice of property as security for the loan.

In pursuance to the suggestions contained in the letter above mentioned, Helm went to Louisiana, executed the mortgage and notes in Louisiana, and delivered them to Col. Shaw, the person delegated by Duncan to accept the mortgage and take the notes. It appears from the letter of Duncan that the money was paid on the bill of Duncan in New Orleans. The notes bear date in Tensas parish, Louisiana, and are made payable at the Bank of Louisiana, in New Orleans, and they are secured by mortgage on lands situated in Louisiana. It seems clear that the contract was intended to have effect in Louisiana, and the courts of Louisiana are invoked to enforce it.

Article 10 of the Civil Code declares: "The form *and effect of public and private written instruments* are governed by the laws and usages of the places where they are passed or executed."

The notes and mortgage were executed in Louisiana, and the form and effect of these written instruments are governed by the law of Louisiana. But even if the agreement entered into in Mississippi could be regarded as the contract whereby the money was loaned to Helm, (and this we can not assent to), still it was to have effect in Louisiana; and the second section of article ten of the Civil Code declares that: "The effect of acts passed in one country, to have effect in another country, is regulated by the laws of the country where they are to have effect." 11 Martin, 23, Vidal *v.* Thompson; 17 La., Beirne & Burnside *v.* Patton, 589; Hawley *v.* Sloo, 12 An. 815; Hughes, Hyllested & Co. *v.* Kleingender Brothers, 14 An. 845.

The contract must be governed by the act of 1844, re-enacted in 1855. That act declares that the amount of conventional interest shall not exceed eight per cent. per annum, under pain of forfeiture of the entire interest. If, then, the contract stipulated for more than eight per cent. per annum interest, that stipulation was an absolute nullity, because it was prohibited by law. C. C. 12; Revised Statues, 267.

The memorandum accompanying the letter of Duncan, already referred to, is as follows:

"LOAN OF $30,000.

| | |
|---|---|
| One note, payable first of January, 1856 ................... $ | 3000 00 |
| One note, payable first of January, 1857 .................... | 3000 00 |
| One note, payable first of January, 1858 .................... | 3000 00 |
| One note, payable first of January, 1859 .................... | 3000 00 |
| One note, payable first of January, 1860 .................... | 10,500 00 |
| One note, payable first of January, 1861 ..... ............... | 9750 00 |
| One note, payable first of January, 1862 .................... | 9000 00 |
| One note, payable first of January, 1863 .................... | 8250 00 |

"Notes to be dated in the parish of Tensas, made payable in New Orleans, and secured by mortgage on lands and negroes in the parish; the mortgage to be executed and recorded at the expense of the borrower."

It is evident that the sum, $49,500, for which the eight notes were given, was made up of the thirty thousand dollars loaned, and ten per centum per annum interest on the different installments. This does not seem to be disputed. But it is contended that " the act of 1844 is a penal statute, enacted to punish usury," and that the Legislature had the power to abolish, and that it did abolish, the penalty against usury, by the act of 1860; and that this act was retrospective in its operation.

In other words, a contract which was a nullity in 1854, when it was made, is said to have been made valid by the act of 1860. Article 8 Civil Code declares that " a law can only prescribe for the future; it can not have a retrospective operation," etc.

Neither the act of 1856 nor the act of 1860 gave vitality or validity to contracts which were void before the passage of said laws. 12 An. 222, Merville v. LeBlanc; 15 An. 329, Crane v. Beatty; 15 An. 395, Weaver v. Maillot.

The payments made by the defendant must be applied to the extinguishment of the debt lawfully due, that is, the principal, and not to the usurious interest. 12 An. 660; 13 An. 233; 18 An. 714; 9 Iowa 383; 32 Miss. 142; Troplong, Prescription vol. 2, p. 405, No. 827.

The last payment of $8250 having been made within one year previous to the reconventional demand in this case, the defendant is entitled to recover what he has paid over the debt due, $30,000. Statute of 1855, p. 352, sec. 3.

It is therefore ordered and adjudged that the judgment of the district court be affirmed, with costs of appeal.

HOWE, J., dissenting. I am unable to concur in that portion of this decree which gives judgment on the reconventional demand. It seems to me that the amount paid for usury should be deemed to have been pro rata on each note, and that all that the defendant can now recover is the amount of interest thus paid by him within twelve months prior to the date of the filing of the reconventional demand.

Rehearing refused.