No. 4002

Second Circuit

(Second Division)

———

THE HAMILTON COMPANY v. MEDICAL ARTS BUILDING CO., INC.

(UNITED IRON WORKS, INC., Intervener and Third Opponent)

———

(June 11, 1931. Opinion and Decree.)
(July 16, 1931. Rehearing Refused.)
(October 15, 1931. Writ of Certiorari and Review Refused by Supreme Court.)

———

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for plaintiff, appellee.

Modisette, Irion, Comegys & Switzer, of Shreveport, attorneys for intervener, appellant.

TALIAFERRO, J. Intervener and third opponent, United Iron Works, Inc., of Kansas City, Mo., in the month of November, 1928, sold, delivered to, and installed for, defendant, Medical Arts Building, Inc., of Shreveport, La., certain machinery and equipment for the production and application of refrigeration, for the price of $2,175 on which there was a balance due of $629.69 when this litigation began. The purchaser gave to intervener its promissory notes for the deferred part of said price, with 6 per cent interest and 10 per cent attorney's fees in event of suit thereon, but took no mortgage to secure the notes. Nothing was recorded to give notice that the machinery and equipment were unpaid for. This machinery and equipment was shipped from Kansas City, or other points in Missouri, and was installed in defendant's building at intersection of Travis and Louisiana streets, during the month of January, 1929.

On July 26, 1929, defendant gave a special mortgage on its lots of ground and office building, aforesaid, to the Hamilton Company, plaintiff herein, and to C. L. Shaw Company, for $30,000, evidenced by its several notes, described in the mortgage. This act of mortgage was duly recorded in the official records of Caddo parish the day of its execution, and subsequently plaintiff acquired the notes of Shaw & Co. Defendant defaulted on its said notes, and on January 11, 1930, foreclosure proceedings were instituted thereon by plaintiff, and in due course the mortgaged property, including said refrigeration plant, was seized by the sheriff and advertised for sale.

In the meantime the United Iron Works, Inc., was placed in the hands of a receiver at Kansas City by the federal court, and through said receiver this intervention and third opposition was filed on February 26, 1930.

Intervener alleges that the machinery and equipment sold by it to defendant was installed in the basement of defendant's said office building very soon after sale and delivery thereof; that the notes evidencing the unpaid part of the purchase price were secured by a vendor's lien and privilege on said machinery, refrigeration plant, and equipment; that same has been seized with said office building and the land whereon same is located, by the sheriff of Caddo parish, in the foreclosure suit of plaintiff, and is being advertised for sale. The prayer is that said machinery, refrigeration plant, and equipment be separately appraised and separately sold by the sheriff, and that he be ordered to hold the proceeds of such sale until the further orders of the court; that intervener have judgment against defendant for $629.69, the balance due on the price of said machinery and equipment, with interest and attorneys' fees, and judgment against plaintiff and defendant recognizing its vendor's lien and privilege on said property as outranking and superior to any claim

of plaintiff, and ordering the judgment rendered in its favor paid out of said proceeds by preference and priority over plaintiff and others. Order of court issued as prayed for requiring separate appraisement and separate sale of the property described on which defendant asserted a vendor's lien and privilege. This litigation now is over the proceeds of sale of said property held by the sheriff.

Plaintiff answered the intervention, but defendant did not. A judgment by default was entered against it.

The answer is a general denial of the allegations of intervener's petition, except as to those relating to the foreclosure by plaintiff and seizure of defendant's property, including that against which the vendor's lien and privilege is asserted, and the impending sale thereof by the sheriff. It is further averred that, if any machinery or equipment or refrigeration plant was installed in the Medical Arts Building, the same became a part of said realty and incorporated therein, and became subject to plaintiff's mortgage; that the refrigeration plant in said building rests upon, and is securely fastened to, concrete foundations, and that same is an immovable by destination.

Under the issues tendered by these pleadings, the case was tried, resulting in a judgment rejecting intervener's demand and dismissing its suit with costs. Intervener appealed.

The first negotiations looking to the purchase by defendant of the machinery and equipment for a refrigeration plant from intervener took place in Dallas, Tex., between their respective representatives. This was very soon followed by a written proposal of intervener, dated at Shreveport, November 10, 1928, on printed form for the purpose, wherein it proposed "to furnish certain machinery and equipment for the production and application of refrigeration as described in specifications hereto attached." Production of refrigeration at rate of six tons per day of 24 hours, under stipulated conditions, was guaranteed. On November 15, 1928, defendant signed written acceptance of the above-mentioned proposal at Shreveport, and same was either forwarded to intervener at Kansas City or to its agent at, Dallas. The proposal with defendant's acceptance thereon was finally approved by the vice-president of the seller at Kansas City, November 28, 1928.

Two propositions of law arise in this case. The first is: Was the contract between intervener and defendant a Louisiana contract? If so, as a consequence the unpaid purchase price was secured by a vendor's privilege. The second is: Has such vendor's privilege been lost as a result of the installation of the machinery and equipment in defendant's building, for the purpose purchased, and being attached thereto for its use and benefit, no chattel mortgage securing the unpaid part of the purchase price having been registered?

Logically, the first question to be determined is whether we are dealing with a Louisiana contract. If the contractual relation between intervener and defendant is not governed and controlled by the laws of the state of Louisiana, a finding by this court to that effect will make it unnecessary to consider the second question, for intervener will be without remedy or right to pursue the goods sold by it to defendant.

The original proposal of intervener, referred to supra, contains the following stipulation, holding in suspense, in so far as concerned intervener, the terms and conditions of the proposal already accepted by defendant, to-wit:

"This agreement is executed and signed in duplicate, but it is understood that it shall become binding upon the seller only when approved by an executive officer of the seller at its home office in Kansas City, Mo., U. S. A., and if not approved the payment accompanying this proposition shall be returned promptly to the seller."

The proposal and acceptance were forwarded to intervener's office in Kansas City, and on November 26, 1928, was approved by its vice-president, thus completing all the requirements necessary to render the contract binding on both sides.

The following pertinent stipulations are contained in the contract under discussion:

"The seller shall furnish an engineer to supervise and assist in making installation of said equipment and machinery."

"The seller shall furnish all labor for ammonia work. Buyer to furnish labor for putting up water lines and cooling tower."

"It is agreed and understood that a test run of three days must be made on the plant, for tne purpose of making adjustments, if any, that may be required."

"And it is hereby understood and agreed that a failure on the part of the buyer to reject the plant by notifying the seller in writing wichin three days from completion of installation above mentioned, shall constitute an acceptance on the part of the buyer."

The record does not disclose the date the plant was finally installed, but on January 30, 1929, defendant wrote a letter of acceptance to intervener, on form used for that purpose, to-wit:

"The undersigned this day accepts as completed according to contract and specifications, dated 10 day of Nov., 1928, the #30 machine 4 x 4 and Drinking Water Cooling Equipment.

"This acceptance is subject to the provisions of said contract, if any, in respect of replacing defective materials."

Plaintiff argues that, when the contract under consideration, was accepted by the vice-president of intervener company in Kansas City, pursuant to the suspensive stipulation therein, it became a Missouri contract, and therefore no vendor's lien arose to protect the seller as to the unpaid portion of the purchase price, and that, when the goods were loaded on cars in Missouri, consigned to defendant on open bill of lading, the title there passed, and thereafter the goods became the property of the purchaser. This argument overlooks other conditions of the contract, suspensive in their nature, which were to be eventually executed, and could only be executed, in the state of Louisiana, where the goods were destined for installation and use, and which, until complied with, caused the contract to be executory and incomplete in respect to its fulfillment.

A contract of sale is perfected by three concurring circumstances, viz.: The object or thing, the price and the consent. Civ. Code, art. 2439. But the perfection of the contract so as to fix responsibility of the parties to it, in the event of its final execution or non-execution, is one thing, while the actual passing of the title of the thing, the object of the contract, under conditions suspensive in their nature, is another.

It is contended by intervener that the ultimate consummation of the contract between it and defendant was suspended until all of the stipulations of the proposal, quoted supra, had been fulfilled as written, citing article 2460 of the Civil Code:

"Things, of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold, until the buyer be satisfied with the trial, which is a kind of suspensive condition of the sale."

The case of De La Vergne Co. v. N. O. & Western R. R. Co., 51 La. Ann. 1733, 26 So. 455, in our opinion, is decisive of the issue before us as to whether the contract between defendant and intervener is a Lou-

isiana contract, and whether the unpaid part of the purchase price is secured by a vendor's lien and privilege.

On these questions the syllabus of that case reads:

"A contract made in New York, to be executed and consummated in Louisiana,— the acceptance of the thing forming the object of the contract being dependent upon a suspensive condition, to-wit, that after completion a stipulated test is to be applied, which test is to be made, and can only be made, in Louisiana,—is a Louisiana contract, and the thing sold subject to the vendor's privilege accorded by the Louisiana law."

The contract under consideration by the court in the above-named case was signed in the state of New York, the domicile of both parties thereto. It was to be executed in Louisiana. It provided for the construction, erection, and delivery by the Delta Construction Company (assignor of defendant) of two cotton compresses in Louisiana within a certain time and for a stipulated amount. The finished compresses, it was stipulated, were to respond favorably to certain tests set out in the contract.

In the course of this opinion, Justice Blanchard, as the organ of the court, said:

"The contract for the presses, while made in New York, was to be executed and consummated in Louisiana. The presses were to be erected and completed here, and there was a suspensive condition in the contract, viz. that after completion a test stipulated for in the contract was to be applied here, and the acceptance of the presses by defendant was dependent on their performance measuring up to the requirements of the test. The presses and their appurtenances remained the property of the plaintiff and at their risk until thus tested and accepted. Hence the delivery of the presses was to be accomplished here.
"The contract therefore must be held to be a Louisiana contract, and the presses subject to the lien accorded by our law to a vendor"—citing McIlvaine v. Legare et

al., 36 La. Ann. 362; McLane v. Creditors, 47 La. Ann. 135-141, 16 So. 764; Overend v. Robinson, 10 La. Ann. 728; Duncan v. Helm, 22 La. Ann. 418; Maillard v. Nihoul, 21 La. Ann. 412; Carlin v. Gordy, 32 La. Ann. 1288; Scannell v. Beauvais, 38 La. Ann. 218; and Shakspeare v. Ware, 38 La. Ann. 574; Benjamin on Sales, secs. 308, 319, 651.

The syllabus in Reed McLane v. His Creditors, 47 La. Ann. 134, 16 So. 764, in part, reads:

"When it was in contemplation of both parties to a contract of sale that the property should reach the vendee in Louisiana, and while there in his possession a portion of the price would be still unpaid, it is fair to presume, in the absence of express stipulation to the contrary, that the vendee should reserve right of final acceptance for a reasonable time after its receipt, and that both parties should contract with reference to the operation of the laws of Louisiana."

It so happens that the goods purchased by McLane was machinery, and the seller (Curtis & Company) was domiciled at St. Louis, Mo., from which place most of the goods were shipped to the purchaser at Franklin, La.

In this case the question of most importance was whether there was a vendor's lien on the machinery sold to McLane. Counsel opposing the contention that the contract was a Louisiana contract, among other propositions, submitted to the court and argued the following:

That the machinery bought by McLane was delivered to him when it was delivered to the carrier at St. Louis, and was always thereafter at his risk and in his possession.

That the contract by the selling agent in Louisiana was merely executory, and was not an executed contract, until, under the terms of the contract, the goods were placed upon the cars at St. Louis.

That, when a sale is made in Louisiana of goods to be delivered in St. Louis, by the terms of the contract, the sale takes place in law at St. Louis, and the vendor has no privilege in Louisiana.

None of these contentions were upheld by the court. The seller's agent had full authority to bind his principal in respect to the sale of the machinery, and there were no suspensive conditions embodied in the contract. The court virtually held that as the goods, to the knowledge of both parties, were intended for use in Louisiana, and part of the price was deferred until after the goods had reached the seller, the laws of Louisiana governed.

In Maillard v. Nihoul, 21 La. Ann. 412, the syllabus is as follows:

"In a sale of goods in New York to a merchant in New Orleans by samples presented by an agent in New Orleans, to be delivered in New Orleans in quality equal to the samples presented, the sale is not complete until the goods are delivered, and they are at the risk of the seller until delivery takes place."

The syllabus in Overend, Gurney & Co. v. Robinson & Olroyd et al., 10 La. Ann. 728, so far as pertinent, is:

"Where the sale between the parties was, in New York, executory merely, with the intention that it should be consummated in New Orleans, and it was so consummated, the contract must be considered as completed in New Orleans, and the vendor's privilege may be exercised according to the laws of Louisiana."

With regard to contract of sale where the goods are shipped from the seller in one state to the buyer in another, the contract being executory in its nature, and containing stipulations or suspensive conditions which may not be finally discharged until after the delivery of goods to the purchaser, the laws of the state where the conditions are fulfilled, the last act in consummation of the intention of the parties, will govern.

In the case at bar, the seller contracted with full knowledge that the purchased goods were destined for use in Louisiana; part of the purchase price was not to be paid until after the goods were delivered and installed; the notes representing the deferred part of the price were executed in Louisiana. It was a part of the seller's obligation to furnish an engineer to supervise in the installation of the goods sold and also furnish all labor for the ammonia work. After installation of goods, a test of three days "must" be made, and within this testing period the purchaser had the right to reject the plant. We do not think he had the right to arbitrarily reject the plant, but it is certain that, if the plant did not function as guaranteed, he would have had the right to reject it, and thereafter it would have been the property of the seller.

We are informed in brief by counsel for intervener that the judge of the lower court held the contract under consideration to be a Louisiana contract. We agree with that holding.

Having reached the conclusion that the contract between intervener and plaintiff was a Louisiana contract, and that a vendor's lien and privilege secured the unpaid part of the purchase price of the goods sold, the next question for determination is whether such lien and privilege has been lost to the seller as a consequence of the goods having been installed and constituted into the refrigeration plant in the basement of defendant's building, and attached thereto.

This question is argued at length and ably by counsel of both sides orally and in briefs. It is not barren of difficulty. Much can, and has been, said for and

against the loss of the privilege under such circumstances.

Plaintiff's contention is that, the machinery and equipment, after being installed and being attached to defendant's building, became immovable by destination, lost their identity, and therefore the privilege thereon in favor of the seller ceased to exist against it. It is argued that, where a third person acquires mortgage rights against property, after becoming immovable by destination, the law applicable thereto is not the same as respects a case where the controversy as to whether the privilege has been lost is between original purchaser and seller. We do not agree with this position. So far as we are able to ascertain, the law is the same in both cases. The major parts of this machinery and equipment, in order to be utilized for the purposes of the plant, of which they became a part, were bolted to a concrete base, and by means of connecting pipes were attached to other pipes which ramified the entire building to conduct ice water to the offices, and which pipes were installed as the building itself was constructed. These pipes that carry water over the building are not involved in this controversy, and to remove the refrigeration plant and cooling system would not disturb them at all.

We think this plant became an immovable by destination when attached to defendant's building, but did not become a part of the building, and, had the building been conventionally sold, or sold by the sheriff without a separate appraisement of the plant, the purchaser would have acquired title to the plant free of the privilege against it. Act No. 51 of 1912; Scovel v. Shadyside Co., 137 La. 918, 69 So. 745, Ann. Cas. 1917B, 178. Civ. Code, art. 468. As long as the identity of the property, which has become an immovable by destination, is preserved and it may be removed from the building, foundation, or other object to which it is attached without material injury thereto, it remains affected by the vendor's lien, and may be seized and sold separately.

"Privileges on movable property shall exist without registration of same except in such cases as may be prescribed by law." Constitution 1921, art. 19, sec. 19.

Civil. Code, art. 3227:

"He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser."

In the well-considered case of Weiss v. Hudson Construction Co., 151 La. page 1, 91 So. 525, it was held that a vendor's lien unrecorded was not primed by a recorded chattel mortgage placed on the property thereafter; that by the adoption of the Chattel Mortgage Law (Act No. 198 · of 1918) the Legislature did not intend to avail itself of the permit reserved in the exception in the above-quoted article of the constitution.

It follows from this decision and others on same subject that, if property has become immovable by destination and its identity is preserved, and it may be removed without material injury to building to which it is attached, and thereafter a chattel mortgage is placed on it, still the unrecorded vendor's lien may be enforced against it to the prejudice of the chattel mortgage. A fortiori, it follows that a mortgage on the building wherein the immovable by destination is located does not prime the unrecorded vendor's lien.

The machinery and equipment involved in this suit consisted mainly of a tank, ammonia compressor, and two pumps. The other equipment included in the sale consisted of fittings, accessories, etc., needed

in assembling and connecting the major parts and converting the whole into the plant, a distinct unit. The evidence establishes that all of these major parts of the plant may be removed from the building easily, but that a door or window would have to be enlarged to allow removal of the tank.

This plant was installed quite a while after the defendant's building was constructed, but it is not shown through what opening the tank was carried into the basement. It is shown that it could not be taken apart and the parts removed without material injury to itself or the building.

We have reached the conclusion that, notwithstanding the fact that the plant in defendant's building, composed of the machinery and equipment purchased from intervener, became an immovable by destination, yet its integrity as a whole, and that of its parts, was preserved, and that its removal from the building may be accomplished with but slight injury or damage thereto.

These questions have been adjudicated by our courts in numerous decisions, some of which are not easily reconciled with others, while some have been decided by a divided court.

In the recent case of Receivership of Augusta Sugar Co., reported in 134 La. 971, 64 So. 870, it was held, by a divided court, that:

"A vendor's privilege upon movables as machinery is not lost by their becoming immovables by destination, and it may be asserted so long as the machinery is complete in itself and can be removed without destruction. * * *

"A vacuum pan worth many thousands of dollars, around which was built a corrugated iron structure, does not lose its identity as a complete piece of machinery and become part of the building because it is necessary to open one of the walls to remove it, and hence the seller of the pan may assert his vendor's privilege thereon as in the case of other complete articles of machinery.

"That the removal of machinery for sugar refining will disable a sugarhouse and prevent operation is no ground for the refusal of the right of the unpaid vendor to assert his privilege. * * *

"Tanks used in connection with a sugar refinery and to store oil which were not in the sugarhouse, but were only connected therewith by pipes and can be removed without injury to the refinery as a whole, are not immovables, and the unpaid seller of the tanks may assert his vendor's privilege thereon.

"That it is necessary to cut the rivets and take apart iron tanks in order to facilitate removal will not prevent the unpaid seller from asserting his vendor's privilege thereon."

The syllabus of this case was not prepared by the court, but follows very closely the language used by the court in the opinion.

To the same effect is Carlin, Adm'r, v. Gordy, Sheriff, 32 La. Ann. 1285; Baldwin v. Sheriff, 47 La. Ann. 1466, 17 So. 883; Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044, 22 So. 310.

In the case of Pratt Engineering & Machine Co. v. Cecelia Sugar Co., 135 La. 179, 65 So. 100, wherein Chief Justice Monroe dissented and Justice O'Neil took no part, the syllabus, in part, reads as follows:

"The vendor's privilege on sugar-house machinery continues to exist as long as the machines remain in possession of the purchaser and their species have not been changed by incorporation with the building."

In this opinion the court at page 183 of Pratt Eng. & Machine Co. v. Cecelia Sugar Co., 135 La., 65 So. 100, 102, says:

"The defense that the vendor's privilege has been extinguished by the alleged immobilization of the engine and crusher is without merit. The evidence shows that

these articles of machinery may be readily removed without injury to themselves or any material damage to the plant. In Carlin v. Gordy, 32 La. Ann. 1288, the court, speaking through Fenner, J., said:

" 'The privileges resting on movables are, in some cases, affected· by the changes which may take place in the nature or destination of the things. But such changes must be so radical as to create a new species of thing and destroy that species which originally existed—as, to use the illustration of Cujas, when a pine or cypress log is converted into a ship, or when wool is converted into a garment, or when marble is made into a statue.' "

This case reaffirms the decision in the matter of Receivership of Augusta Sugar Co., 134 La. 971, 64 So. 870, supra.

In Monroe Building & Loan Ass'n v. Johnston, Sheriff, 51 La. Ann. 470, 25 So. 383, the syllabus is: ·

"The unpaid vendor of machinery has the right to seize and sell the machinery, although it may have been attached to, and has become part of, the immovable that is mortgaged." Carlin v. Gordy, 32 La. Ann. 1285; Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044, 22 So. 310.

In this case the person who held the vendor's lien against the machinery sold by· it undertook to enforce its rights and sell the property affected by the privilege. The plaintiff, who held a mortgage on the sawmill, of which the unpaid for machinery had become a part, undertook to prevent the sale of the machinery by injunction, but the court ruled adversely to their contention.

In Bank of Winnfield v. Olla State Bank, 11 La. App. 640, 124 So. 621, 623, the court through Judge Odom said:

"But the vendor's lien attaches only so long as the thing remains the property of ·the vendee and in his possession. Civil Code, art. 3227. The property here in controversy remained in the possession of Paulette up to the day it was sold to the plaintiff bank and the vendor's lien attached to it up to that date. That is true, even though Paulette did attach it to the lease and make it a part thereof· by destination, because the property retained its identity and could have been removed without material damage to the lease itself, and it has been specifically held that the vendor's privilege exists on movables though impressed with the fictitious character of immovables by destination. * * * The defendant bank, we think, could have pursued this property under its vendor's lien at any time previous to its sale by the plaintiff bank."

In that case the effect of the decision was that the vendor's lien was lost because the property affected thereby was allowed sold confusedly in a mass with other property.

For the reasons herein assigned, the judgment appealed from is annulled, reversed, and set aside, and it is now ordered, adjudged, and decreed that intervener have and recover judgment against defendant, Medical Arts Building Co., Inc., for $629.69, with 6 per cent interest from February 1, 1929, and 10 per cent additional thereon as attorney·s fees; and that intervener have and recover judgment against defendant and plaintiff recognizing the vendor's lien and privilege on· the refrigeration and cooling plant and the parts and parcels thereof in the basement of defendant's office building at intersection of Travis street with Louisiana street in the city of Shreveport, La., and on the proceeds of the sale thereof now in the hands of the sheriff of Caddo parish, which lien and privilege is hereby recognized and decreed to be superior in rank and effect to the mortgage of plaintiff; and the sheriff of Caddo parish is hereby ordered to pay over said proceeds of sale to intervener.

It is further ordered, adjudged, and decreed that the costs of the intervention and third opposition be paid by plaintiff and defendant.