In the Matter of Bennie G. HUGHES, and Pamela Dube Hughes, Debtors.

Bankruptcy No. 479–00014.

United States Bankruptcy Court,
W. D. Louisiana,
Lafayette—Opelousas Division.

Feb. 23, 1981.

William C. Sandoz, Opelousas, La., trustee, pro se.

James C. McClelland, Franklin, La., for defendant Alcide Dupre.

Erwin LaRose, Baton Rouge, La., for debtors.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This cause came for trial at Opelousas, Louisiana, on September 24, 1980, upon the objection of the trustee to a proof of claim filed by Alcide Dupre who asserts a vendor's privilege. The trustee asserts that the claim of Mr. Dupre is an unsecured claim under the Bankruptcy Code.

### STATEMENT OF THE CASE

On July 20, 1978 Alcide Dupre, the defendant herein, purchased a boat, trailer and motors from Charles Vellion. In order to purchase this property Mr. Dupre made two loans, one from Sugarland Bank and the other from Sugarland Credit. The boat and trailer were collateral for these loans. The purchase price of this property was $5,000.00. After doing repairs of the boat Mr. Dupre sold the boat and the trailer to Bennie Hughes, the Debtor herein. The sale from Mr. Dupre to Mr. Hughes is only evidenced by an unwitnessed "Act of Sale" which indicated the total price was $4000.00. The buyer, Mr. Hughes, according to this "Act of Sale" was to pay $1014.16 in cash and pay off the mortgage at Sugarland Bank for $2985.54. The bill of

sale revealed that Mr. Hughes has paid off the mortgage and has paid the cash to Mr. Dupre.

When Mr. Hughes filed the schedules of his debts in connection with his bankruptcy, he indicated that he still owed Mr. Dupre $3,000.00 for the purchase of the boat and the trailer. The schedules are signed under oath by Mr. Hughes. Mr. Dupre's testimony under oath also indicates that there remains an unpaid balance on the agreed purchase price of $3,000.00. Both parties thus contend that the total price agreed upon was $7,000.00. They also state that a promissory note and Chattel Mortgage to secure this remaining indebtedness was supposed to be made by Mr. McClelland, the attorney for Mr. Dupre, but was never done. Therefore the $3,000.00 debt is not evidenced in writing and no security instrument exists.

The trustee objects to this $3,000.00 debt being treated as a secured debt. The seller Mr. Dupre contends that it should be considered a secured debt since under Louisiana Law the vendor has a privilege on the purchase price of movables sold by him, which is a secured interest.

### STIPULATIONS OF THE PARTIES

The parties have made the following stipulations at the hearing on the trustee's objection to the claim:

1.

The title was never transferred to Mr. Hughes' name and Mr. Dupre cooperated fully with the trustee in obtaining clear title.

2.

The items were sold in globo by the trustee in liquidation of the estate.

3.

At the time of the filing of the petition the boat was in the possession of the debtor. It was left in his constructive (sic) possession . . . . . for convenience's sake, to avoid storage charges.

### CONCLUSIONS OF LAW

The trustee seeks to have the claim of Mr. Dupre classed as unsecured for the bal-

ance due on the purchase price of the boat and trailer. Mr. Dupre declares that his rights as a vendor under Louisiana law create a valid lien on this property and that his claim should be recognized as a secured claim. Further Mr. Dupre asserts that his lien is not voidable by the trustee under the trustee's avoidance powers of the Bankruptcy Code.

■ The first issue raised is whether Mr. Dupre has a lien as defined by the Bankruptcy Code and, if so, whether this device withstands the invalidation standards of the Bankruptcy Code. This question is particularly complex since the definition of the term "lien" under the Code is largely dependent on the term as used in common law jurisdictions. Louisiana law being based on civil law uses different terminology and attaches a different significance to the terms "lien" and "privilege." The Bankruptcy Code defines the term "lien" broadly enough to encompass both the vendor's lien and the vendor's privilege under Louisiana law. The Bankruptcy Code defines lien as:

"lien" means charge or interest against or interest in property to secure payment of a debt or performance of an obligation. 11 U.S.C. § 101(28).

This definition encompasses judicial liens, security interests and statutory liens. See, House Report No. 95–595, 95th Cong., 1st Sess., U.S.Code Cong. & Admin.News 1978, 5787 (1977). The Bankruptcy Code further defines statutory liens as:

"statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien or distress for rent whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute. 11 U.S.C. § 101(38).

■ There has been some discussion as to whether or not the Louisiana Civil Code could be a "statute" since it is simply a codification of what elsewhere is the common law. The problems associated with this approach would be that parts of the Louisiana Civil Code would be, and others would not be, a statute. The purpose of defining "statutory lien" was to assure secured creditors that chattel mortgages would not be invalidated as statutory liens. A narrow view of "statutory" would not further this intent but would also create excessive uncertainty.

The term "statutory" then should be viewed as contemplating all statutes purporting to give preference to a creditor, even the provisions of the Louisiana Civil Code. Hamilton, "Statutory Liens Under Section 67c of the Bankruptcy Act: Some Problems of Definition," 43 *Tul.Law Rev.* 305 (1969).

The concern of congress regarding "statutory liens" is that they were frequently disguised priorities and exhausted all of the bankrupt's estate leaving very little for the general creditors. To include such devices within the definition of lien would open such devices to invalidation provisions and thus further the intent of congress. The savings clause would then be the test of which devices would withstand the trustee's avoidance powers and which would be voidable. See *In Re Trahan*, 283 F.Supp. 620, aff. 402 F.2d 796; cert. den. 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 and *In Re J. R. Nieves & Co.*, 446 F.2d 188 (1971).

■ Under the Bankruptcy Code the trustee is given certain powers with which he is able to avoid liens. This grant of power is contained in 11 U.S.C. § 544. This is the "strong arm clause" of the trustee's avoidance powers. The provision gives the trustee the rights of a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition; of a creditor with a writ of execution against the debtor unsatisfied as of the date of the petition; and a bona fide purchaser of the real property of the debtor as of the date of the petition. House Rep.No.95–595, 95th Cong. 1st Sess. (1977) 370, U.S.Code Cong. & Admin.News 1978, 5787; Senate Rep.No.95–989, 95th Cong., 2d Sess. (1978) 85, U.S.Code Cong. & Admin.News 1978, 5787. The provision which relates to a ven-

dor's lien or privilege is the grant of the status of a bona fide purchaser contained in 11 U.S.C. § 544(a)(3).

The trustee shall have, as of the commencement of the case and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—* * *

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer at the time of the commencement of the case, whether or not such purchaser exists.

The use of the trustee's powers to avoid certain statutory liens is contained in 11 U.S.C. § 545:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

* * * (2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists;

Those devices within the definition of statutory liens will be effective against the trustee only if they meet the tests of 11 U.S.C. § 545. The intent is that a device which is so easily defeated does little to improve the position of the creditor with respect to the debtor and is viewed as intended to primarily establish a state priority among competing creditors. 43 *Tul.Law Rev.* 305, supra.

■ It is state law which determines the nature of the vendor's privilege; but it is the Bankruptcy Code which determines whether or not a right of this nature is a secured claim in bankruptcy. *In Re Trahan,* supra.

■ Under Louisiana's Civil Code a vendor of movables has three separate and distinct rights; A right to refuse to deliver the merchandise until paid; the right of recission; and the vendor's privilege. Each of these are separate and distinct rights. *Louis Werner Saw Mill Co. v. White,* 205

La. 242, 17 So.2d 264 (1944). The right to refuse delivery until paid is called a "lien," this right is provided in Louisiana Civil Code Article 2487 which states:

The seller is not bound to make a delivery of the thing if the buyer does not pay the price, and the seller has not granted him any term for payment.

■ The right of the vendor to rescind the sale occurs after delivery to the vendee but upon nonpayment of the purchase price. To use this right the vendor must give back to the vendee any partial payment made, may take back the property, and the transaction is as if it had never occurred. The Civil Code articles which give this right are contained in Articles 2045 and 2046.

The dissolving is that which when accomplished, operates the revocation of the obligation placing matters in the same state as though the obligation had not existed.

It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place. La.Civil Code Art. 2045.

A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of contract may either sue for its dissolution with damages, or, if the circumstances of the case permit, demand a specific performance. La.Civil Code Art. 2046.

In all cases the dissolution of a contract may be demanded by suit or by exception; and when the resolutory condition is an event, not depending on the will of either party the contract is dissolved of right; but, in other cases, it must be sued for, and the party in default may, according to the circumstances, have a further time allowed for the performance of the condition. La.Civil Code Art. 2047.

The third right of a vendor under Louisiana Law is the vendor's privilege. The Louisiana Civil Code defines a privilege as:

Privilege is a right, which the nature of the debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages. La.Civil Code Art. 3186.

The provisions which control the vendor's privilege on movables are Articles 3227 through 3231, basically described in Article 3227:

He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on credit or without, if the property still remains in the possession of the purchaser.

So that although the vendor may have taken a note, bond or other acknowledgement from the buyer he still enjoys the privilege. La.Civil Code Art. 3227.

■ It is important to note the distinction between the vendor's privilege provided for in Article 3227 and the vendor's lien provided for in 2487 which is like the common law vendor's lien. At common law there is nothing equivalent to the Louisiana vendor's privilege. The difference is that the common law lien is lost if the vendee gets possession of the property sold, but the outstanding feature of the civil law vendor's privilege is that it is enforceable as long as the vendee has possession. It is also important to note that the Bankruptcy Code recognizes this right of reclamation in 11 U.S.C. § 546(c). The trustee is unable to keep goods delivered to the debtor while insolvent. To reclaim such goods delivered the seller must demand a return of them within ten days of receipt of the goods by the insolvent debtor. The court may deny reclamation if the court grants the seller a priority as an administrative expense, or if it secures such a claim by a lien. 11 U.S.C. § 546(c). Also note that the Bankruptcy Code does not consider this right "secured".

■ The vendor's privilege on movables does not depend on recordation and is superior to a chattel mortgage subsequently granted. *Hamilton v. Medical Arts Bldg.*, 135 So. 94 (La.App. 2 Cir. 1931); also see *In Re Bernard Furniture*, 1 BCD 721, where a vendor's privilege primed a prior recorded chattel mortgage when the item purchased in one Parish and then subsequently moved to another Parish where the chattel mortgage was recorded.

The vendor's privilege is a right a creditor has towards a specific piece of property. This right is granted by the above cited provisions of the Louisiana Civil Code.

■ The vendor's privilege is lost when the thing sold is no longer in the vendee's possession. Comment 4 Tul.Law Rev. 239 (1930); or when the item is given in pledge. *D. H. Holmes v. Morris*, 188 La. 431, 177 So. 417.

■ Since under Louisiana Law the vendor's privilege is lost when the property is sold to a bona fide purchaser who acquires possession the final issue to consider is whether the trustee has acquired the rights of a bona fide purchaser without possession or a bona fide purchaser with possession. There have been no cases since the enactment of the new Bankruptcy Code which deal with this question. There are two cases decided under the old Bankruptcy Act. The case of *In Re Trahan*, supra, decided in 1968 held that under Louisiana Law the trustee did not defeat the vendor's privilege since actual physical possession of the property was in the vendee at the time of the filing of his petition on bankruptcy. The status of the trustee as a bona fide purchaser was determined by state law. The court concluded that the status of the trustee as a bona fide purchaser under Bankruptcy Act section 67(c)(1)(B) did not require assumption that a bona fide purchaser be in possession of the thing sold.

The second case decided under the old Act is *In Re J. R. Nieves*, supra; decided in 1971. This case was decided under the Puerto Rican Code which is nearly identical in its treatment of the vendor's lien or privilege and the status of a bona fide purchaser as the Louisiana Civil Code. The *Nieves* court came to a conclusion opposite that of the *Trahan* court, and decided the trustee's position as a bona fide purchaser invalidated the vendor's lien or privilege.

In this case the *Trahan* decision was discussed extensively. Here the *Trahan* analysis was criticized as not going far enough. *Nieves* considered a two step analysis, the first step is the analysis used on *Trahan*;

> ... (The) date of bankruptcy must be viewed as the date in which one inquires not who has possession but whether the lien is so perfected that, in the absence of bankruptcy, a subsequent bona fide purchaser would acquire rights to the goods. In this case the lien did indeed exist on the date of bankruptcy, i. e., there had been no transfer to a bona fide purchaser. This is however only the first step. The second one is to ascertain whether that lien is strong enough to prevent a subsequent purchaser from taking. *In Re Nieves*, supra.

Each case bases its decision on the question of whether the trustee has possession sufficient to avoid the lien. The *Trahan* court insists that under Louisiana law the only possession the trustee has is constructive. To defeat the vendor's privilege actual physical possession by the bona fide purchaser must occur. The reality of the *Trahan* situation was that the debtor had actual physical possession, not the bona fide purchaser-trustee. The *Nieves* court looked beyond this. It is impossible to look to the realities of the parties. In actuality the trustee is not a real bona fide purchaser who can protect his position by taking delivery the moment he pays for the goods. The trustee is a hypothetical bona fide purchaser on the date of the filing of the petition by the debtor. It would be ridiculous to require a debtor to come to the bankruptcy court bringing all of his property and give actual physical possession to the trustee at the time he files his petition. The *Nieves* court contends:

> In our view when congress spoke of the "rights" of a hypothetical purchaser, it contemplated a full blooded not an anemic purchaser. *In Re J. R. Nieves*, supra.

In *Nieves* the court found further indicia to support this intention of congress. The definition of bona fide purchaser found in the Act includes a "bona fide incumbrancer or pledgee", 11 U.S.C. § 1(5). Since the sellers lien or privilege would be defeated by a pledgee and the definition of bona fide purchaser includes a pledgee, congress must have intended this result. A pledge is only created if the pledgee acquires possession.

Using a pledge as the test, one must conclude under either Louisiana or Puerto Rico law that, since the pledge is superior to the seller's lien, the lien is therefore invalid in bankruptcy against the trustee unless saved by the (11 U.S.C.) § 107(c)(1)(B) provisos.

In an extensive article, "Statutory Liens Under Section 67(c) of the Bankruptcy Act: Some Problems of Definition," 43 *Tulane Law Review* 305; both the *Trahan* and the *Nieves* cases were discussed. Again the *Trahan* analysis was considered faulty.

In this writers estimation the court overlooked the fundamental issue of whether the device could be defeated by a bona fide purchaser by improperly emphasizing whether or not such purchaser existed in the case under consideration. It should be remembered that the test invalidates "every" statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date whether or not such purchaser exists. 43 *Tul.Law Rev.* 305, supra.

To require real actual possession of a real bona fide purchaser when only a hypothetical purchaser exists creates an impossible and absurd mandate. In actuality the trustee could, under his rights of the Code, go to the home or business of a debtor immediately upon filing, take all the debtors' possessions and put it in storage until it was administered. Under the *Trahan* analysis if the trustee obtained possession of the goods minutes or days after the debtor filed, it would only be then that the vendor's privilege could be avoided. The Bankruptcy Code would not allow this interpretation since all the rights of the parties are fixed upon the filing of the debtors' petition.

The definition of bona fide purchaser found in the old Act no longer exists in the

new Code. This change is probably due to the inclusion of language and comment in the new Code which indicates a stronger position towards statutory and common law liens. For example in the definitions section "security" is defined. 11 U.S.C. § 101(35)(B)(vii) provides that:

"security" does not include—debt or evidence of indebtedness for goods sold or delivered or services rendered.

The invalidation provisions of the old Act were criticized by the Commission on the Bankruptcy Laws as being so lenient that the only liens that were invalidated were liens on ambulatory houses in Pennsylvania, the get to bulls, rams, and boars in Colorado, and vendor's liens in Puerto Rico. See Comm.Rept., H.R.Doc.No.93–137, 93rd Cong., 1st Sess. The commission further commented:

The existing Act recognized the validity of most federal and state statutory and common law liens. This recognition substantially frustrates the goals of equity and uniformity, and it has generated a substantial amount of litigation and made the Act considerably more complex. The commission, therefore recommends a substantial departure from the present Act with respect to the treatment of statutory and common liens. Only those statutory and common law liens expressly recognized would be enforceable in bankruptcy cases. Comm.Rep. supra, at page 212.

In conclusion, the analysis of the *Trahan* court did not go far enough. The result in *Trahan* did not reflect consideration of the intent and workings of the bankruptcy provisions or the bona fide purchaser status. This reaction to the avoidance of liens is what the Commission criticized. The interpretation operated so as not to avoid liens at all, much less operate as congress intended. Legislative hearings indicate that only those common law and statutory liens expressly recognized should withstand the trustee's avoidance power. The Code does not expressly recognize the vendor's privilege, or this type of statutory lien. Louisiana vendor's privilege provisions do not in their own terms provide protection against bona fide purchasers. It should also be remembered that a vendor is not without recourse. To insure secured status of his claim the vendor may require a chattel mortgage or other security device. Therefore, we hold that the Louisiana vendor's privilege is avoidable by the trustee in his position as bona fide purchaser.

In so holding, this court is aware of the fact that the PER CURIAM opinion of the Fifth Circuit Court of Appeal merely adopted the opinion of the District Court in *Trahan*, which it considered well reasoned and exhaustive. It is hoped that in view of the present construction of the Fifth Circuit Court, faced with a change in the Bankruptcy Law, that the Court would more closely examine this vexing problem.

Judgment in accordance with the foregoing will be signed upon submission. All costs of this proceeding to be paid by Mr. Alcide Dupre, the defendant.